**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CIVIL CASE NO. 24-81170-CV-MIDDLEBROOKS-MATTHEWMAN

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

     v.

BENJAMIN BALLOUT,
MOHAMED ZAYED, and
WILLIAM FIELDING,

                Defendants.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST**
**DEFENDANTS BENJAMIN BALLOUT AND MOHAMED ZAYED AND**
**MEMORANDUM OF LAW IN SUPPORT**

Dated:  April 3, 2025               Respectfully submitted,

                                      */s/ Patrick Disbennett*_____
                                        Patrick Disbennett
                                        S.D. Fla. Special Bar ID A5503234
                                        Tyson Lies
                                        S.D. Fla. Special Bar ID A55033
                                        Securities and Exchange Commission
                                        801 Cherry Street, Suite 1900
                                        Fort Worth, Texas 76102
                                        Tel: (817) 266-9633 (Disbennett)
                                        Tel: 817-682-217-3580 (Lies)
                                        disbennettpa@sec.gov
                                        liest@sec.gov

                                        *Attorney for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................iv-vii

I.     SUMMARY OF THE ARGUMENT ..................................................................1

II.    SUMMARY JUDGMENT STANDARD ...........................................................3

III.   STATEMENT OF FACTS ...................................................................................3

IV.    ARGUMENT .......................................................................................................3

       A.  Summary Judgment is Warranted on the SEC's Rule 10b-5(b) Claim against Ballout ...3

           1.  Ballout made misrepresentations and misleading omissions to investors ...........4

               i.    CoviKlear ...........................................................................................4

               ii.   Enerkon's "Cash"...............................................................................6

               iii.  Enerkon's alleged purchase of land in Pennsylvania and plans to build a power plant.........................................................................................7

               iv.   Fielding's bogus promissory note and purported loan...................8

           2.  Ballout's misrepresentations and omissions were material .................................9

           3.  In connection with the purchase or sale of security and interstate commerce....10

           4.  Ballout acted with scienter ..................................................................................11

       B.  Summary Judgment is Warranted on the SEC's Section 17(a)(2)...................................3

           1.  Material misstatements and misleading omissons ...............................................14

           2.  Zayed obtained money or property by means of misstatements and Omissions.............................................................................................................15

           3.  In connection with an offer or sale of a security and interstate commerce.........16

           4.  Zayed was at least negligent ...............................................................................16

       C.  Summary Judgment is Warranted on the SEC's Claims against Defendants Under Section 17(a)(1) and 17(a)(3) and Rule 10b-5(a) and (c) ........................................................17

1.   Fraudulent scheme, transaction, practice, and course of business ......................18

2.   In connection with offer/purchase/sale of a security and interstate commerce ..19

3.   Defendants acted with the requisite state of mind ..............................................20

V.     CONCLUSION ...........................................................................................................20

# TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

*Anderson v. Libby Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................3

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988) ........................................................................................9, 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................3

*Durgin v. Mon*,
   659 F. Supp. 2d 1240 (S.D. Fla. 2009) ................................................................9

*FindWhat Inv'r Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) ......................................................................4, 5

*In re Jan. 2021 Short Squeeze Trading Litig.*,
   620 F. Supp. 3d 1231 (S.D. Fla. 2022) ............................................................. 20

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135–42 (2011) ......................................................................................4

*Lorenzo v. SEC*,
   587 U.S. 71 (2019) ............................................................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................3

*SEC v. Ali*,
   454 F. Supp. 3d 1281 (N.D. Ga. 2020) ..............................................................12

*SEC v. Alternative Green Techs., Inc., No. 11 CIV. 9056 SAS*,
   2012 WL 4763094 (S.D.N.Y. Sept. 24, 2012) .................................................. 12

*SEC v. Big Apple Consulting USA, Inc.*,
   783 F.3d 786 (11th Cir. 2015) ...........................................................................19

*SEC v. Collector's Coffee, Inc., No. 19 Civ. 4355*
   (VM) (GWG), 2023 WL 6453709 (S.D.N.Y. Oct. 4, 2023) ..............................12

*SEC v. Complete Bus. Sols. Grp.*,
   538 F. Supp. 3d 1309 (S.D. Fla. 2021) ..........................................................3, 16

*SEC v. Curshen*,
   888 F. Supp. 2d 1299 (S.D. Fla. 2012) .........................................................19, 18

*SEC v. Czarnik, No. 10 Civ. 745*
   (PKC), 2010 WL 4860678 (S.D.N.Y. Nov. 29, 2010) .......................................16

iv

*SEC v. Dain Rauscher, Inc.*,
    254 F. 3d 852 (9th Cir. 2001) ...............................................................16

*SEC v. E-Smart Techs., Inc.*,
    74 F. Supp. 3d ............................................................................ 10, 11

*SEC v. Farmer, No. 4:14-CV-2345*,
    2015 WL 5838867 (S.D. Tex. Oct. 7, 2015) ...........................................18

*SEC v. Farnsworth*,
    692 F. Supp. 3d 157 (S.D.N.Y. 2023) ....................................................11

*SEC v. Goldsworthy*,
    2008 WL 8901272 (D. Mass. June 11, 2008) .................................. 16-17

*SEC v. Greenstone Holdings, Inc.*,
    No. 10 Civ. 1302 (MGC), 2012 WL 1038570 (S.D.N.Y. Mar. 28, 2012) .................. 10, 6, 15

*SEC v. Hughes Capital Corp.*,
    124 F.3d 449 (3d Cir. 1997) ............................................................... 17

*SEC v. Johnson*,
    No. 2:20-cv-08985-FWS-DFM, 2023 WL 2628678 (C.D. Cal. Feb. 17, 2023) ........ 12, 13, 20

*SEC v. Merch. Capital, L.L.C.*,
    483 F.3d 747 (11th Cir. 2007) ............................................................ 14

*SEC v. Monterosso*,
    756 F.3d 1326 (11th Cir. 2014) ............................................... 11, 12, 20

*SEC v. Morgan Keegan & Co.* ,
    678 F.3d 1233 (11th Cir. 2012) ............................................................ 3

*SEC v. Platforms Wireless Int'l Corp.*,
    617 F.3d 1072 (9th Cir. 2010) ............................................................ 13

*SEC v. Profile Sols., Inc.*,
    727 F. Supp. 3d 1301 (S.D. Fla. 2024) ................................................. 3

*SEC v. Quiros*,
    Case No.: 16-cv-21301-GAYLES, 2016 WL 11578637 (S.D. Fla. Nov. 21, 2016) ............. 10

*SEC v. Radius Cap. Corp.*,
    653 Fed. App'x 744 (11th Cir. 2016) .............................................. 11, 16

*SEC v. Sayid*,
    No. 17 Civ. 2630 (JFK), 2019 WL 6307367 (S.D.N.Y. Nov. 25, 2019) ................ 15

*SEC v. Spinosa*,
    31 F. Supp. 3d 1371 (S.D. Fla. 2014) ............................................. 15, 16

*SEC v. StratoComm Corp.*,
  2 F. Supp. 3d 240 (N.D.N.Y. 2014) ................................................................ 6, 10, 13

*SEC v. Torchia*,
  183 F. Supp. 3d 1291 (N.D. Ga. 2016) .................................................................... 7

*SEC v. Watkins*,
  317 F. Supp. 3d 1244 (N.D. Ga. 2018) .................................................................... 9

*SEC v. Westhead*,
  733 F. Supp. 3d 1284 (S.D. Fla. 2024) ...................................................... 14, 15, 18

*Tomasini v. Mount Sinai Med. Ctr. of Fla., Inc.*,
  315 F. Supp. 2d 1252 (S.D. Fla. 2004) .................................................................... 3

*Tsc Indus. v. Northway*,
  426 U.S. 438 (1976) ................................................................................................ 9

*SEC v. Ali*,
  454 F. Supp. 3d 1281 (N.D. Ga. 2020) ................................................................ 6, 10

*SEC v. Big Apple Consulting USA, Inc.*,
  783 F.3d 786 (11th Cir. 2015) .............................................................................. 14

*SEC v. Revolutionary Concepts, Inc.*,
  No. 21-10984, 2022 WL 386085 (11th Cir. Feb. 9, 2022) ............................... 7, 8, 13

*SEC v. Syron*,
  934 F. Supp. 2d 609 (S.D.N.Y. 2013) ................................................................... 15

*United States v. Naftalin*,
  441 U.S. 768 (1979) .............................................................................................. 18

**<u>Federal Statutes</u>**

<u>Securities Act 1933</u>
Section 17(a)
    [15 U.S.C. § 77q(a)] ...................................................................17

Section 17(a)(1)
    [15 U.S.C. § 77q(a)(1)] ......................................................, 17, 18, 20

Section 17(a)(2)
    [15 U.S.C. § 77q(a)(2)] ...........................................2, 14, 15, 16, 17,

Section 17(a)(3)
    [15 U.S.C. § 77q(a)(3)] .................................................17, 18, 20


<u>Securities Exchange Act of 1934</u>
Section 10(b)
    [15 U.S.C. § 78j(b)] .............................................................1, 2, 17, 20

<u>Securities Exchange Act of 1934 Rules</u>

Rule 10b-5
    [17 C.F.R. § 240.10b-5] ..............................................................4, 11, 18

Rule 10b-5(a)
    [17 C.F.R. § 240.10b-5(a)]...............................................2, 17, 18, 20

Rule 10b-5(b)
    [17 C.F.R. § 240.10b-5(b)] ...............................................1, 3, 4, 16, 20


<u>Federal Rules of Civil Procedure</u>

Fed. R. Civ. P. 56 ................................................................... 1, 3

Fed. R. Civ. P. 56(a) ............................................................... 1, 3

Fla. L.R. 56.1 ........................................................................ 1

## I.     SUMMARY OF THE ARGUMENT

Pursuant to FED. R. CIV. P. 56 and S.D. FLA. L.R. 56.1, Plaintiff Securities and Exchange Commission ("**SEC**") moves for summary judgment, as to liability,[1] against Defendants Benjamin Ballout ("**Ballout**") and Mohamed Zayed ("**Zayed**")[2] (together, "**Defendants**").

Defendants engaged in a fraudulent scheme to pump and dump the publicly traded stock of Enerkon Solar International ("**Enerkon**"). Enerkon was a penny-stock company that purported to be involved in power plants and other business activities primarily outside the United States. In reality, Enerkon did not generate any known cash from its purported business activities. As CEO and CFO of Enerkon, Ballout made misstatements and misleading omissions in Enerkon's press releases and public disclosures to investors. Ballout then schemed with Zayed to convert a fraudulent promissory note into Enerkon stock, which was sold at inflated prices. Defendants' ability to profit from their pump-and-dump scheme was stopped when the SEC suspended trading in Enerkon's securities on June 22, 2021. The SEC moves for summary judgment on each claim against Defendants as follows.

*First*, Ballout violated Section 10(b) of the Securities Exchange Act of 1934 ("**Exchange Act**") and Rule 10b-5(b) thereunder as a matter of law. There is no genuine dispute that Ballout—as CEO and CFO of Enerkon—made material misstatements and misleading omissions in Enerkon's press releases and public disclosures, with scienter, regarding: (i) a multi-million dollar purchase order that was not real; (ii) Enerkon's acquisition of a company that purportedly owned distribution rights to a Covid-19 test product, which the company did not actually own; (iii) Enerkon's millions of dollars

---

[1] If the Court grants this Motion, the only remaining issue will be the remedies to be imposed against Defendants, which would be decided upon a future motion filed by the SEC.

[2] Zayed executed a waiver of service. (ECF No. ___). But he has not properly filed an answer to the Complaint. Although he emailed the SEC's counsel and the Clerk a document titled "Response to Complaint," Zayed—who is currently under federal indictment, resides in Egypt, and is *pro se*—has not mailed this document to the Clerk for filing, despite being told that he must do so. Nonetheless, the SEC respectfully asks the Court to enter summary judgment as to liability against Zayed, or in the alternative, to enter a default and default judgment as to liability against Zayed.

in quarterly cash balances, when in fact, Enerkon had less than $500 in cash in its bank account; (iv) land in Pennsylvania that Enerkon purportedly "purchased" and "plans" to build a power plant, when in fact, Enerkon did not have funding to build such a plant and never purchased such land; and (v) a fraudulent and backdated convertible promissory note issued to William Fielding ("**Fielding**").[3]

*Second*, Zayed violated Section 17(a)(2) of the Securities Act of 1933 ("**Securities Act**") as a matter of law. There is no genuine dispute that Zayed received $96,000 from Fielding by means of several false or misleading statements and omissions of material fact that were used to convert the fraudulent and backdated promissory note, including misstatements and omissions that: (i) Fielding purportedly made three payments totaling $180,000 to or for Enerkon in 2017 in exchange for the note, when in fact, such payments were not made; and (ii) Enerkon purportedly issued the promissory note to Fielding in November 2017, when in fact, the evidence indicates the note was backdated to comply with the requisite holding period for the issuance of unrestricted stock.

*Third*, Ballout and Zayed violated Sections 17(a)(1) and (a)(3) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5(a) and (c) as a matter of law. There is no genuine dispute that each Defendant engaged in multiple fraudulent acts pursuant to Defendants' fraudulent scheme to "pump and dump" Enerkon securities, with scienter, including, among others: (i) Defendants disseminated false documents to Enerkon's transfer agent to convert Fielding's bogus note to unrestricted Enerkon stock; (ii) Ballout caused Enerkon to enter an agreement that Enerkon had no ability to honor in order to create the false appearance of a lucrative business opportunity to build a power plant; and (iii) Zayed employed multiple fabricated documents, including a fake letter of interest to artificially inflate Enerkon's stock price and a doctored bank-account statement to convert Fielding's bogus note to unrestricted Enerkon stock.

---

[3] Fielding was also named a defendant in this case, but he settled with the SEC and a Final Judgment (ECF Doc. No. 14) was entered on November 19, 2024 resolving all claims and remedies against him.

2

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). As the movant, the SEC bears the initial burden of identifying the evidence that demonstrates the absence of any genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is met, defendants have "a duty to present affirmative evidence to defeat a properly supported motion for summary judgment." *Tomasini v. Mount Sinai Med. Ctr. of Fla., Inc.*, 315 F. Supp. 2d 1252, 1257 (S.D. Fla. 2004) (citing *Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *SEC v. Profile Sols., Inc.*, 727 F. Supp. 3d 1301, 1314 (S.D. Fla. 2024) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III.    STATEMENT OF FACTS

Pursuant to Local Rule 56.1, the material facts for which the SEC contends there is no genuine dispute are set forth in Plaintiff's Statement of Material Facts. (hereafter, "SOF ¶ ___").[4]

## IV.    ARGUMENT

**A.    Summary Judgment is Warranted on the SEC's Rule 10b-5(b) Claim against Ballout.**

To establish a prima facie case under Rule 10b-5(b), the SEC must prove that Ballout "made a material misrepresentation or materially misleading omission in connection with the sale or purchase of securities with scienter." *Profile Sols.*, 727 F. Supp. 3d at 1317–18 (citing *SEC v. Complete Bus. Sols. Grp.*, 538 F. Supp. 3d 1309, 1329 (S.D. Fla. 2021)). Unlike a private litigant, the SEC need not prove "justifiable reliance" or "damages" in "an SEC enforcement action." *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012).

---

[4] The SEC's summary judgment evidence is set forth in its Appendix in Support of Its Motion for Summary Judgment (hereinafter, "App ___"). Plaintiff's Statement of Material Facts and Appendix are incorporated herein by reference.

1.      **Ballout made misrepresentations and misleading omissions to investors.**

"Rule 10b-5 prohibits not only literally false statements, but also any omissions of material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Profile Sols.*, 727 F. Supp. 3d at 1315 (citing *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011); 17 C.F.R. § 240.10b-5(b)). "By voluntarily revealing one fact about its operations, a duty arises for the corporation to disclose such other facts, if any, as are necessary to ensure that what was revealed is not 'so incomplete as to mislead.'" *Id.* at 1315–16 (citing *FindWhat Inv'r Grp.*, 658 F.3d at 1305). Simply put, "a defendant may not deal in half-truths." *FindWhat Inv. Grp.*, 658 F.3d at 1305.

Here, Ballout made at least four different categories of misrepresentations and misleading omissions in Enerkon's press releases, OTC Disclosure Statements, and public filings. As an initial matter, there is no genuine dispute that Ballout is the "maker" of these misstatements and omissions under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 141–42 (2011) (holding that a defendant must have "made" alleged misstatements to be liable under Rule 10b-5(b), and that "the maker of a statement is the person or entity with ultimate authority over the statement"). Ballout admits that he drafted and had ultimate authority over the press releases and other published statements, many of the statements in the press releases are directly attributed to him, and he signed Enerkon's public disclosures. (SOF ¶¶ 3, 13, 18, 21); *see Profile Sols.*, 727 F. Supp. 3d at 1318 (finding as a matter of law defendant was "maker" based on fact that the press releases "quoted" defendant and defendant "gave final approval for all press releases").

          *i.   CoviKlear's business*

Enerkon purportedly acquired CoviKlear Holdings International ("**CoviKlear**") in 2021 via a convertible promissory note. (SOF ¶ 7). CoviKlear was seeking to be an agent for KrowdX, the master distributor of a Covid-19 test manufactured by Graphene Leaders Canada ("**GLCM**").

(*Id.*) Ballout made multiple misrepresentations and omissions to investors regarding CoviKlear.

*First*, in Enerkon's March 9, 2021 press release, Ballout announced that Enerkon had acquired CoviKlear, but misrepresented that CoviKlear "own[ed] distribution rights" to a Covid-19 test, when in fact, CoviKlear did not own such distribution rights.  (SOF ¶¶ 8-9).

*Second*, after the March 9 press release, KrowdX—which actually owned the distribution rights to the Covid-19 test—told Ballout the release was false and that CoviKlear did not "own the distribution rights" to the Covid-19 test and demanded that Ballout remove his false advertising. (SOF ¶¶ 7, 11). Ballout did not correct the false disclosure. Instead, he subsequently made additional statements in Enerkon's OTC Disclosure and press release about CoviKlear's supposed "rights" and the expected revenue therefrom, yet never publicly disclosed what KrowdX had told him. (*Id.* ¶¶ 12-13); *see FindWhat Inv. Grp.*, 658 F.3d at 1305 ("[E]ven absent a duty to speak, a party who discloses material facts in connection with securities transactions assumes a duty to speak fully and truthfully on those subjects.").

*Third*, in Enerkon's May 11, 2021 press release, Ballout announced that CoviKlear had obtained an "order" for the Covid-19 test device that was supposedly "placed by an NGO [non-governmental organization] operating in the Dominican Republic from a Major Medical Foundation." (SOF ¶ 13). Ballout claimed this order was worth "$320 Million annually" and would generate "$62 Million USD annually" for CoviKlear. (*Id.*) But the order, along with the NGO, were not real—they were fabricated by Zayed. (*Id.* ¶¶ 14-16). KrowdX never accepted the fake order, which never generated any revenue and was actually worthless. (*Id.* ¶ 16).

There is no genuine dispute that these statements and omissions were false and misleading. *See, e.g.*, *Profile Sols.*, 727 F. Supp. 3d at 1316 (granting summary judgment for SEC and finding press releases contained misstatements, where they announced "revenue of $20 to $30 million[]

and sales to begin within 12-months," when in reality, company "stood to make no profits at all"); *SEC v. Greenstone Holdings, Inc.*, No. 10 Civ. 1302, 2012 WL 1038570, *8-9 (S.D.N.Y. Mar. 28, 2012) (granting summary judgment and holding no genuine dispute that press releases announcing initial purchase orders that did not disclose true nature of the purchase orders or that they were conditional contained false statements).[5]

### ii.    Enerkon's "Cash"

Ballout repeatedly misrepresented in Enerkon's OTC Disclosure Statements that Enerkon had millions of dollars in "Cash," when in fact, Enerkon's bank statements show it never had more than $500 in its bank account. (SOF ¶¶ 18-19). As just one example, Ballout represented in Enerkon's Quarterly OTC Disclosure that "[a]s of March 31, 2021, the Company has cash and cash equivalents of <u>$18,191,000</u>," when in fact, Enerkon's bank account statement showed an "[e]nding balance on March 31, 2021" of <u>$38.41</u>.[6] Ballout made similar misrepresentations about Enerkon's cash balances in its OTC Disclosures between June 30, 2018 through December 31, 2020. (SOF ¶¶ 18-19). Ballout never publicly disclosed Enerkon's true cash balances. (*Id.* ¶ 20).

Although Ballout claims that Enerkon's reported cash balances were "deferred revenue," the OTC Disclosure Statements did not disclose the cash balances as deferred revenue—i.e., that the cash balances were entirely deferred, unearned, and inaccessible to the company.[7] Rather, Ballout made the misleading claim in Enerkon's OTC Disclosure Statements that Enerkon's reported cash included "highly liquid investments with maturity dates of three months or less at

---

[5] *See also SEC v. Ali*, 454 F. Supp. 3d 1281, 1297 (N.D. Ga. 2020) (holding that future projections of profits were false and misleading because defendant made them with no supporting factual basis); *SEC v. StratoComm Corp.*, 2 F. Supp. 3d 240, 255 (N.D.N.Y. 2014) (granting summary judgment and holding statements in press releases that created false impression that company had developed operational telecom product when it had not were false and misleading), *aff'd* 652 Fed. Appx. 35 (2d Cir. 2016).

[6] (App.569 (March 31, 2021 Disclosure); App.089 (March 31, 2021 bank statement)).

[7] (*See* App.510, 518, 528, 544, 553, 569, 582 (OTC Disclosures pertaining to "Cash and Cash Equivalents")).

the time of purchase,"[8] when there is no evidence that Enerkon received the millions of dollars in cash reported in its Quarterly and Annual OTC Disclosures.[9]

There is no genuine dispute that these statements and omissions were false and misleading. *See Profile Sols.*, 727 F. Supp. 3d at 1316 (granting summary judgment for SEC based on false and misleading statements about millions of dollars in revenue that the company did not stand to actually receive); *SEC v. Torchia*, 183 F. Supp. 3d 1291, 1319 (N.D. Ga. 2016) ("Defendants made material omissions when they failed to disclose their…true financial circumstances to investors."); *cf. SEC v. Revolutionary Concepts, Inc.*, No. 21-10984, 2022 WL 386085, at *9 (11th Cir. Feb. 9, 2022) (finding district court properly granted summary judgment, where defendant misrepresented in public filings that company "collected payments consisting of cash equivalents valued at approximately $1.2 million dollars," when, "in reality, the 'cash equivalents' were convertible promissory notes from [another company] with $342 in cash and $13,453 in assets at that time").

### iii.    *Enerkon's alleged purchase of land in Pennsylvania and plans to build a power plant*

In Enerkon's May 3, 2021 press release, Ballout represented that Enerkon had "Signed [an] Agreement to Purchase of 122 Acres [sic] of Commercial Land in Pennsylvania Turnpike" to establish "our planned 20 MW Solar and Hydrogen Plant facility." (SOF ¶ 21). In Enerkon's OTC Disclosure that Ballout signed on May 18, 2021, Enerkon confirmed it had "purchased" the land in Pennsylvania for the "planned" power plant. (*Id.*) In fact, the "Commercial Land" was zoned residential. (*Id.* ¶ 22). The "Signed Agreement to Purchase" was actually a lease agreement with an option to purchase the land for $6 million. (*Id.* ¶ 23). Enerkon never actually "purchased" the land. (*Id.*) And it never made any payments to the landowner under the lease agreement. (*Id.*)

---

[8] (*See id.*)

[9] (SOF ¶ 19; *see also* App.057-134 (Enerkon bank statements); App.235 [Ballout 3/5/2025 Dep. Tr. at 33:9-24]).

Ballout never disclosed that Enerkon had no plans and made no effort to seek to re-zone the property for industrial use or that it had made no payments to the landowner to lease, much less, purchase the land.  (*Id.* ¶¶ 22-23).[10] He similarly did not disclose that Enerkon did not have the funds or means to purchase the land and build a 20 MW plant. (*Id.* ¶ 23). The press release also includes a picture that purports to depict Enerkon's "planned 20 MW Solar and Hydrogen Plant facility," but the picture actually depicts a facility in Japan that is one of the world's largest hydrogen-producing facilities, which Ballout never disclosed. (*Id.* ¶ 24).

There is no genuine dispute that these statements and omissions were false and misleading. *See, e.g.*, *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094-95 (9th Cir. 2010) (granting summary judgment and holding press release was materially misleading when it suggested a working prototype for new cellular communications technology had been developed when it had not); *SEC v. e-Smart Techs., Inc.*, 85 F. Supp. 3d 300, 320-321 (D.D.C. 2015) (granting summary judgment based on defendant's failure to disclose true status of company's smartcard product).

### iv.    *Fielding's bogus promissory note and purported loan*

In Enerkon's OTC Disclosure Statements starting September 30, 2019 through at least March 31, 2021, Ballout represented that Fielding loaned Enerkon $180,000 in November 2017 and received in return a convertible promissory note. (SOF ¶ 32). But, in fact, Fielding never loaned $180,000 *to Enerkon*. (*Id.* ¶ 31). Instead, Fielding paid $65,000 *for Ballout to personally* acquire his controlling shares in Enerkon, which Ballout and Enerkon never disclosed. (*Id.*)[11]

Further, in those same OTC Disclosure Statements, Ballout falsely represented that Fielding's promissory note was issued in November 2017, when in fact, the evidence indicates that

---

[10] (*See also* App.487 [Martinez Decl. ¶ 15]).

[11] Separately, Fielding allowed Defendants to use his credit card for certain Enerkon expenses. (SOF ¶ 43). These charges are not accounted for in company records and occurred well after the purported November 2017 loan. (*Id.*).

the note was issued and signed in or around 2019 and *backdated*. (*Id.* ¶¶ 29, 32). Indeed, Ballout could not have issued the note on behalf of Enerkon in November 2017, because he was not even involved with Enerkon in 2017, and he testified he did not become its controlling shareholder or an officer or director of Enerkon until February 2018. (*Id.* ¶¶ 1, 27, 29). Even assuming *arguendo* Ballout did have authority to issue the note in November 2017 (he did not), then he failed to disclose Fielding's purported note in Enerkon's OTC Disclosure Statements for the periods March 30, 2018 through June 30, 2019—much less that the note was, as discussed below, fabricated to improperly trade Enerkon shares. (*Id.* ¶ 32; *see also id.* ¶¶ 33-38).

There is no genuine dispute that these statements and omissions were false and misleading. *See, e.g.*, *Durgin v. Mon*, 659 F. Supp. 2d 1240, 1254 (S.D. Fla. 2009) (finding statements about company's obligation to pay debt misleading, where defendants described the obligation as "non-recourse" but failed to disclose guarantees under which the company was responsible for the debt); *SEC v. Watkins*, 317 F. Supp. 3d 1244, 1254 (N.D. Ga. 2018) (finding no genuine dispute that defendant misrepresented that investor funds would be used for corporate purposes, when in fact, defendant used the funds to satisfy personal obligations).

### 2. Ballout's misrepresentations and omissions were material.

Information is material if there is a substantial likelihood that a reasonable investor would consider the information important in his or her investment decision and would view it as having significantly altered the total mix of available information. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). "The materiality requirement is meant 'to filter out essentially useless information that a reasonable investor would not consider significant, even as part of a larger 'mix' of factors to consider in making his investment decision.'" *Watkins*, 317 F. Supp. 3d at 1254 (citing *Levinson*, 485 U.S. at 234).

At the time of Ballout's misstatements, Enerkon was a recently formed penny-stock

company with stated plans to significantly grow in value and expand its limited business offerings. (SOF ¶¶ 1-2, 6).[12] Ballout's misstatements and omissions concerned matters that investors would have found important in deciding whether to invest, including that the lucrative business opportunities announced in Enerkon's press releases and disclosures were either fabricated or misleadingly portrayed, that Enerkon had less than $500 in cash (rather than the millions that Ballout falsely claimed), or that Ballout had caused Enerkon to issue a fraudulent $180,000 convertible note to satisfy his own personal $65,000 debt. (*Id.* ¶¶ 7-25).

Accordingly, there is no genuine dispute that Ballout's misstatements and omissions were material. *See SEC v. Ali*, 454 F. Supp. 3d 1281, 1295 (N.D. Ga. 2020) (granting partial summary judgment for SEC and explaining that "statements within press releases boasting about alleged multi-million dollar deals are frequently deemed to be material, and particularly in the context of a start-up company"); *SEC v. Quiros*, No. 16-CV-21301, 2016 WL 11578637, at *14 (S.D. Fla. Nov. 21, 2016) (materiality established as a matter of law, among other reasons, because "[i]nvestors would also want to know that Phase VII revenue projections were impossible to attain"); *E-Smart Techs., Inc.*, 74 F. Supp. 3d at 320 ("One cannot dispute that investors in a publicly traded company—especially one that had yet to bring in substantial revenue like e-Smart—would find the existence (or non-existence) of large 'contract orders' important").[13]

### 3.     In connection with the purchase or sale of a security and interstate commerce

The "in connection with" element is established as a matter of law, because there is no genuine dispute that Ballout's misstatements and omissions were made in press releases, OTC

---

[12] (*See also* App.497-99 (discussing company plans to increase stock price to qualify for listing on Nasdaq)).

[13] *See also StratoComm Corp.*, 2 F. Supp. at 257 (holding statements that company had passed beyond development stage with core product were material and stating that "[s]tatements related to whether a company has a product to sell are material as a matter of law….This is particularly true for development-stage companies"); *Greenstone Holdings, Inc.*, 2012 WL 1038570 at*10 (holding misrepresentation about purchase order was material as a matter of law, and explaining that defendant found purchase order "significant enough to issue a press release").

Disclosure Statements, and public filings that were publicly filed and disseminated to investors while Enerkon's stock was being traded on the OTC market. (SOF ¶¶ 1-2, 8, 13, 18, 21, 25); *supra* section IV.A.2; *see also E-Smart Techs.*, 74 F. Supp. 3d at 320-21 (where the fraud alleged involves public dissemination in a document such as a press release, upon which an investor would presumably rely, the "in connection with" element is met); *SEC v. Farnsworth*, 692 F. Supp. 3d 157, 189 (S.D.N.Y. 2023) ("Any statement that is reasonably calculated to influence the average investor satisfies the 'in connection with' requirement of Rule 10b-5."); *SEC v. Radius Cap. Corp.*, 653 Fed. App'x 744, 750 (11th Cir. 2016) (noting that the Eleventh Circuit construes "the terms 'in connection with the purchase or sale of' and 'in the offer or sale of' broadly").

In addition, there is no genuine dispute that Ballout used "interstate commerce," because his misstatements and omissions were posted on the internet and distributed nationally. (SOF ¶¶ 1-2, 8, 13, 18, 21, 25); *see Profile Sols.*, 727 F. Supp. 3d at 1317 (interstate commerce satisfied as a matter of law because "internet falls under the umbrella of interstate commerce").

### 4. Ballout acted with scienter.

In the Eleventh Circuit, scienter "is satisfied by a showing of intent to deceive, manipulate, or defraud, or severe recklessness." *Profile Sols.*, 727 F. Supp. 3d at 1316 (citation omitted). Severe recklessness means "'those highly unreasonable omissions or misrepresentations that involve not merely simple or inexcusable negligence, but an extreme departure from the standards of ordinary care.'" *Id.* (citation omitted). "Scienter can be established through circumstantial or direct evidence." *SEC v. Monterosso*, 756 F.3d 1326, 1335 (11th Cir. 2014).

Here, there is no genuine dispute that Ballout acted with scienter. For starters, Ballout misrepresented a fraudulent $180,000 promissory note that he signed, backdated, and caused Enerkon to issue to satisfy his own personal $65,000 debt. (SOF ¶¶ 27-29, 31). Ballout undoubtedly knew that he was not even affiliated with Enerkon in November 2017, when he

11

purportedly signed the note as Enerkon's "Chairman." (*Id.* ¶ 29). He also knew, or was severely reckless in not knowing, that Fielding did not actually pay $180,000 to or for the benefit of Enerkon, because he controlled Enerkon's bank account, received Enerkon's bank account statements, and would have known the company's true cash balances. (*Id.* ¶¶ 19, 27-29, 31). No reasonable jury could find that Ballout did not act with scienter based on these indisputable facts. *See SEC v. Alternative Green Techs., Inc.*, No. 11 CIV. 9056 SAS, 2012 WL 4763094, at *6 (S.D.N.Y. Sept. 24, 2012) ("With regard to the backdating of the Corporate Resolution and Convertible Note, it defies logic to suggest that Meuse was unaware that he was signing backdated documents, particularly in light of the fact that on the day he signed the documents, he was no longer the director of AGTI.").

There is also no genuine dispute that Ballout misrepresented to investors that Enerkon would make "$62 Million USD annually" from a purported purchase order. (SOF ¶¶ 13-16). Ballout made this misrepresentation in consultation with Zayed, who, the evidence shows, fabricated the purchase order, and there is no genuine dispute that Ballout knew, or was severely reckless in not knowing, that such order would not actually generate millions in revenue. (*Id.* ¶¶ 14-17); *see Monterosso*, 756 F.3d at 1335 (holding scienter established as a matter of law and reasoning: "after submitting fictitiously manufactured invoices…to [company's] accounting department, [defendants] cannot plead ignorance of the fact that such reported revenue was illegitimate"); *SEC v. Collector's Coffee, Inc.*, No. 19 Civ. 4355 (VM) (GWG), 2023 WL 6453709, at *20 (S.D.N.Y. Oct. 4, 2023) ("The use of fabricated documents by itself shows that defendants acted with scienter"); *SEC v. Johnson*, No. 2:20-CV-08985-FWS-DFM, 2023 WL 2628678, at *15 (C.D. Cal. Feb. 17, 2023) (no genuine dispute "that Defendant acted with the requisite scienter by fabricating multiple invoices").

In addition, there is no genuine dispute that Ballout acted knowingly, or at least severely recklessly, when he:

(i)  Repeatedly and falsely represented that Enerkon had millions in dollars in cash on hand, when he knew, or was severely reckless in not knowing, based on his receipt of the bank statements, that the company actually had no more than $500 in its bank account (SOF ¶¶ 18-20);

(ii)  Told investors that CoviKlear "own[ed] distribution rights" to the Covid-19 test, even though he had not performed certain basic due diligence on CoviKlear, had no basis for that statement, and would have known CoviKlear had no distribution rights based on its agreements with the distributor (*Id.* ¶¶ 8-10);

(iii)  Continued to tout CoviKlear's rights regarding the Covid-19 test to investors even after being expressly told by the actual distributor that his statements were false (*Id.* ¶¶ 11-13);

(iv)  Misrepresented the terms of the lease agreement *he signed* concerning Enerkon's purported purchase of land in Pennsylvania (*Id.* ¶¶ 21-23);

(v)  Told investors that Enerkon planned to build a hydrogen plant, knowing Enerkon did not have the funding to buy the land or build a multi-million dollar plant and that he was posting a picture of an existing hydrogen plant and passing it off as Enerkon's planned facility (*Id.* ¶¶ 21-23).

Accordingly, summary judgment is warranted. *See Revolutionary Concepts, Inc.*, 2022 WL 386085, at *9 (affirming summary judgment, "because there was no genuine dispute that Ali intended to deceive or was severely reckless in publishing the nine false and misleading press releases" when undisputed evidence showed he made no "attempt to find out what [company's] revenue was before telling the market it was millions of dollars").[14]

## B.   Summary Judgment is Warranted on the SEC's Section 17(a)(2) Claim against Zayed.

---

[14] *See also Platforms Wireless Int'l Corp.*, 617 F.3d at 1095 (holding no genuine issue of fact that defendant who knew company had not produced a tested prototype and who made no attempt to correct false impression acted with scienter); *StratoComm Corp.*, 2 F. Supp. at 257 (holding defendant acted with scienter as a matter of law because summary judgment evidence established that he knew company had overstated the status of its product development); *Greenstone Holdings, Inc.*, at *10 (holding no genuine issue that defendant acted with scienter where he knew company lacked resources to fill purchase order announced in press release); *e-Smart Techs., Inc.*, 85 F. Supp. 3d at 323 (holding defendant acted with scienter as a matter of law where evidence showed he knew status of product development did not match disclosures).

To establish a prima facie case under Section 17(a)(2), the SEC must prove by a preponderance of the evidence that Zayed: (1) obtained money or property; (2) by means of a material misstatement or omission; (3) in connection with the offer or sale of a security in interstate commerce; (4) with the requisite mental state. 15 U.S.C. § 77q(a); *SEC v. Westhead*, 733 F. Supp. 3d 1284, 1300 (S.D. Fla. 2024). The SEC need only show negligence for a Section 17(a)(2) violation. *SEC v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007).[15]

## 1.      Material misstatements and misleading omissions

Section 17(a)(2) liability requires a material misstatement or misleading omission, but does not require a showing that Zayed was the "maker" of such misstatement or omission under *Janus*. *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 797 (11th Cir. 2015).

Here, to convert Fielding's bogus promissory note (*see supra* section IV.A.1.iv) to Enerkon stock, Zayed and Ballout sent Enerkon's transfer agent documents that contained materially false or misleading statements and omissions. (SOF ¶¶ 34-37). Using an email account in Fielding's name, Zayed specifically forwarded documents that (i) falsely represented that Fielding made three payments totaling $180,000 to or for the benefit of Enerkon in or around November 2017, when in fact, Fielding's actual bank account statement shows no such payments were made; and (ii) falsely represented that Fielding's bogus promissory note was entered into in November 2017, when in fact, it was created years later and backdated. (*Id.* ¶¶ 34-36). Likewise, Ballout emailed Enerkon's transfer agent documents that falsely represented that the bogus note was issued on November 30, 2017 and that Enerkon incurred the purported $180,000 debt. (*Id.* ¶ 37).

There is no genuine dispute that these misrepresentations and omissions were material. The misrepresentations about Fielding's purported $180,000 loan to Enerkon misled the transfer agent

---

[15] There is no dispute that Zayed's violations occurred via emails, online publications, and wire transfers, and thus, the use of "interstate commerce" element is satisfied as a matter of law. *See Profile Sols*, 727 F. Supp. 3d at 1317.

about the validity of the bogus note. (*Id.* ¶¶ 35-38). The misrepresentations about the date of the bogus note misled the transfer agent about Fielding's compliance with the requisite holding period,[16] causing the agent to issue unrestricted shares to Fielding. (*Id.*) Such misrepresentations and omissions are material as a matter of law. *See SEC v. Sayid*, No. 17 CIV. 2630 (JFK), 2019 WL 6307367, at *1, *7 (S.D.N.Y. Nov. 25, 2019), *aff'd*, 860 Fed. App'x 18 (2d Cir. 2021) (holding defendant's misrepresentations were material, where defendant backdated debt settlement agreements to circumvent one-year holding requirement, causing transfer agent to issue unrestricted stock; *Greenstone Holdings*, 2012 WL 1038570, at *5 ("Insofar as [an] attorney's opinion letter and other documents necessarily inform the transfer agent's decision, misrepresentations in such documents may be considered important by the reasonable investor.").

## 2. Zayed obtained money or property by means of misstatements and omissions.

The "obtain money or property" element is satisfied even when the defendant receives the money or property "indirectly." *See Westhead*, 733 F. Supp. 3d at 1301 ("Having carefully reviewed Section 17(a)(2), as well as the well-reasoned decisions by courts on both sides of the split, the Court finds that 'directly or indirectly' modifies 'to obtain money or property.' [Thus, t]he plain meaning and text of the statute do not require that a defendant obtain funds personally or directly[.]");[17] *Spinosa*, 31 F. Supp. 3d at 1379 (finding "money or property" requirement satisfied based on allegations that defendant "received increased compensation" by increasing the size of the accounts at branches he managed through the alleged fraud).

Here, there is no genuine dispute that (i) Zayed personally obtained $96,000 from Fielding,

---

[16] *See* 17 C.F.R. § 230.144(d) (providing applicable holding periods before restricted securities may be sold).

[17] In contrast to the court in *Westhead*, some courts require a showing that the defendant *personally* obtained the money or property. *See, e.g.*, *SEC v. Syron*, 934 F. Supp. 2d 609, 640 (S.D.N.Y. 2013) (acknowledging that Section 17(a)(2) "clearly creates liability where a defendant 'indirectly' obtains money or property," but concluding that the defendant must "personally" obtain "money or property from the fraud" to prove a violation). But the court need not decide this split in opinions, because the SEC can show that Zayed personally received money or property in this case.

and (ii) Fielding paid those funds to Zayed from the proceeds of his sale of his Enerkon shares, pursuant to an agreement he had with Zayed. (SOF ¶¶ 41-42). Zayed only obtained this money from Fielding "by means of" the material misstatements made to Enerkon's transfer agent, who issued unrestricted Enerkon stock to Fielding based on the misstatements. (*Id.* ¶¶ 38, 41-42).

### 3. In connection with an offer or sale of a security and interstate commerce

The "in connection with" element of the Section 17(a)(2) claim against Zayed is satisfied as a matter of law for the same reasons discussed above for the Rule 10b-5(b) claim against Ballout. *See SEC v. Radius Cap. Corp.*, 653 Fed. App'x 744, 749 (11th Cir. 2016) (explaining that "the 'in connection with the purchase or sale of' and 'in the offer or sale of' elements of Rule 10b–5 and § 17(a) can be interchangeable"). Also, there is no genuine dispute that Zayed's receipt of money by means of material misstatements and omissions occurred "in connection with" the sale of a security—namely, Fielding's sale of Enerkon stock. (SOF ¶¶ 41-42). Lastly, selling stock derived from converting fraudulent promissory notes is sufficiently "in connection with" the sale of a security to satisfy Section 17(a). *See SEC v. Czarnik,* No. 10 Civ. 745 (PKC), 2010 WL 4860678, at *4 (S.D.N.Y. Nov. 29, 2010).

In addition, there is no genuine dispute that Zayed used "interstate commerce," because the misstatements and omissions were made via email/the internet and Zayed obtained money or property via electronic wire transfers from Fielding's U.S.-based account to an account in Egypt. (SOF ¶¶ 34-37 & n.67); *see Profile Sols.*, 727 F. Supp. 3d at 1317.

### 4. Zayed was at least negligent.

To establish negligence under Section 17(a)(2), the SEC must show that Zayed failed to exercise a standard of reasonable care, i.e., what a "reasonably prudent" person in Zayed's position would have done. *Complete Bus. Sols.*, 538 F. Supp. 3d at 1331; *SEC v. Dain Rauscher, Inc.*, 254 F. 3d 852, 857 (9th Cir. 2001); *SEC v. Goldsworthy,* 2008 WL 8901272, at *12 (D. Mass. June 11,

2008). The question is whether Zayed "acted improperly . . . in light of what he knew or should have known . . . ." *Goldsworthy,* 2008 WL 8901272, at *12; *see also SEC v. Hughes Capital Corp.*, 124 F.3d 449, 453-54 (3rd Cir. 1997) (affirming summary judgment on Section 17(a) where defendant failed to investigate information in press releases).

There is no genuine dispute that a reasonably prudent person in Zayed's position would not have acted as he did. The evidence shows that Zayed fabricated documents and created a fake website and email address for an NGO that did not exist. (SOF ¶¶ 13-15, 34-35). He also emailed Fielding about falsifying an Enerkon corporate resolution so that it would be "dated to comply with the holding period" for the issuance of unrestricted shares and discussed plans to "get MORE free share from BEN [Ballout]…and DO IT AGAIN." (*Id.* ¶ 33). Zayed knew or should have known that obtaining money by means of false and fraudulent representations violated federal law, because he has been under federal criminal indictment since 1997 for wire fraud and was sued by the SEC in 1998 for engaging in such conduct in an unrelated scheme. (*Id.* ¶ 4). No reasonably prudent person in Zayed's position would falsify records or participate in a fraudulent scheme. As a matter of law, Zayed violated Section 17(a)(2) and summary judgment should be granted.

**C.     Summary Judgment is Warranted on the SEC's Claims against Defendants Under Section 17(a)(1) and 17(a)(3) and Rule 10b-5(a) and (c).**

The Court should grant summary judgment on the SEC's claims against Defendants under Section 17(a)(1) and (3) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5(a) and (c). Section 17(a)(1) and (3) of the Securities Act prohibits, in the offer or sale of a security: employing a fraudulent device, scheme, or artifice to defraud; or engaging in a transaction, practice, or course of business which operates or would operate as a fraud on the purchaser. 15 U.S.C. §§ 77q(a)(1), (3). Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder prohibit essentially the same conduct in connection with the purchase or sale of a

security. 15 U.S.C. § 78j(b); 17 C.F.R. §§ 240.10b-5(a), (c); *United States v. Naftalin*, 441 U.S. 768, 778 (1979). Section 17(a)(1) and Rule 10b-5(a) and (c) require "scienter," whereas "Section 17(a)(3) requires only a showing of negligence." *Westhead*, 733 F. Supp. 3d at 1301–02.

1.      **Fraudulent scheme, transaction, practice, and course of business**

Both Defendants engaged in a fraudulent pump-and-dump scheme. *See SEC v. Curshen*, 888 F. Supp. 2d 1299, 1307 (S.D. Fla. 2012) (granting summary judgment for SEC and explaining that "[a] pump-and-dump stock scheme is a classic violation of [Section 17(a)(1) and (3) and Rule 10b-5(a) and (c)]"). Pursuant to this fraudulent scheme, each Defendant engaged in several fraudulent, manipulative, or deceptive acts, transactions, or courses of business.

*First*, as discussed, each Defendant emailed Enerkon's transfer agent documents containing material misstatements and omissions to convert Fielding's bogus note to Enerkon stock, which was then "dumped" or sold to an investor. (SOF ¶¶ 34-38). Such conduct violates Section 17(a)(1) and (3) and Rule 10b-5(a) and (c). *See Lorenzo v. SEC*, 587 U.S. 71, 74 (2019) (holding that person who "disseminate[s] false or misleading statements to potential investors with the intent to defraud, can be found to have violated…Rule 10b–5, subsections (a) and (c), as well as…§ 17(a)(1) of the Securities Act"); *SEC v. Alternative Green Tech., Inc.*, No. 11-Civ. 9056 (SAS), 2012 WL 4763094, at *5 (S.D.N.Y. Sept. 24, 2012) (providing false assurances to a transfer agent, regarding aged debt and backdating of corporate resolutions and a convertible promissory note, in furtherance of a scheme to obtain purportedly unrestricted securities, was "inherently deceptive" and violated Rule 10b-5); *SEC v. Farmer*, No. 4:14-CV-2345, 2015 WL 5838867, at *15 (S.D. Tex. Oct. 7, 2015) (granting SEC summary judgment and finding defendant's marketing campaign that "disseminated false information about [company's] business endeavors" was "a deceptive practice supporting scheme liability").

*Second*, Ballout engaged in additional acts, transactions, and/or courses of business that were fraudulent and deceptive as a matter of law, including: (i) making multiple material misstatements and omissions pursuant to his fraudulent scheme to "pump" or artificially inflate Enerkon's stock price, see *supra* section IV.A;[18] (ii) causing Enerkon to enter into a lease agreement with an option to purchase land in Pennsylvania that Enerkon had no ability or plan to honor, which created the false appearance of a lucrative business opportunity (SOF ¶¶ 21-25); (iii) causing Enerkon to issue a fraudulent and backdated note to satisfy a personal debt (*Id.* ¶¶ 27-29, 31); (iv) causing Enerkon to issue materially false or misleading documents needed to convert Fielding's bogus note to unrestricted Enerkon stock (*Id.* ¶¶ 37-38); and (v) publicly announcing Enerkon's buyback of the majority of Ballout's common stock purportedly to "raise" Enerkon's stock price for the "benefit of the public shareholders," without disclosing that Ballout was also simultaneously helping negotiate the sale of Fielding's Enerkon shares. (*Id.* ¶¶ 37-40).

*Lastly*, Zayed also engaged in additional acts, transactions, and/or courses of business that were fraudulent and deceptive as a matter of law, including: (i) creating an email address and website for an NGO that did not exist and forwarding a fake letter of interest to create the false appearance of a multi-million dollar transaction benefitting Enerkon, (*Id.* ¶¶ 13-16); and (ii) providing a doctored copy of Fielding's bank statement and a false invoice to Enerkon's transfer agent reflecting payments that Fielding did not actually make in order to convert Fielding's bogus note to unrestricted Enerkon stock, which Fielding later sold and from which he paid to Zayed part of his profits. (*Id.* ¶¶ 34-36, 38, 41).

**2.       In connection with offer/purchase/sale of a security and interstate commerce**

---

[18] *See also Curshen*, 888 F. Supp. 2d at 1308 (conduct designed to "artificially inflate [company's] stock value" fraudulent as a matter of law); *Profile Sols.*, 727 F. Supp. 3d at 1315–16 (finding liability under "Sections 17(a)(1) and (3), and Rules 10b-5(a) and (c)" established as a matter of law based on false statements and omissions).

For the same reasons discussed above in sections IV.A.3 and IV.B.3, the elements of "in connection with" the offer or sale of a security, "in connection with" the purchase or sale of a security, and use of interstate commerce are all satisfied as a matter of law for the SEC's claims against Defendants under Section 17(a)(1) and 17(a)(3), Section 10(b), and Rule 10b-5(a) and (c).

### 3.      Defendants acted with the requisite state of mind.

There is no genuine dispute that Ballout acted with scienter in violating Section 17(a)(1) and Rule 10b-5(a) and (c) for the reasons discussed above as to the SEC's Rule 10b-5(b) claim. For the same reasons, Ballout also acted at least negligently in violating Section 17(a)(3).

As for Zayed, he provided fabricated documents, created a website and email address for an NGO that did not exist, and discussed plans with Fielding to "get MORE free shares from BEN [Ballout]" and pump-and-dump Enerkon's stock again. (SOF ¶¶ 13-16, 33-36). He also personally profited from the pump-and-dump scheme. (*Id.* ¶ 42); *see also In re Jan. 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231, 1252 (S.D. Fla. 2022) ("Courts can infer scienter when the defendants[, among other things,]… benefitted in a concrete and personal way from the purported fraud"). There is no genuine dispute that Zayed acted with scienter in violating Section 17(a)(1) and Rule 10b-5(a) and (c) and that he was at least negligent in violating Section 17(a)(3). *See Monterosso*, 756 F.3d at 1335; *Collector's Coffee*, 2023 WL 6453709, at *20; *Johnson*, 2023 WL 2628678, at *15; *see also supra* section IV.B.4. Accordingly, summary judgment is warranted.

### V.      <u>CONCLUSION</u>

For the foregoing reasons, the SEC respectfully requests that the Court grant this Motion and grant the SEC such other relief to which it may be entitled. If the Motion is granted, the SEC will file a motion for remedies addressing the relief sought.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2025, a copy of foregoing was filed electronically and served by mail as soon as practicable on anyone unable to accept electronic filing. Defendants Bejamin Ballout and Mohamed Zayed are also being emailed a copy of this motion at the emails they provided to the undersigned.


*/s/ Patrick Disbennett*
Patrick Disbennett