UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-81170-CV-MIDDLEBROOKS

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

BENJAMIN BALLOUT, MOHAMED ZAYED, and
WILLIAM FIELDING,

     Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff's Motion for Partial Summary Judgment Against Defendants Benjamin Ballout and Mohamed Zayed, filed on April 3, 2025. (DE 31). The Motion is supported by a Statement of Material Facts ("SOMF") and appendix. (DE 32; DE 33). Defendants, proceeding pro se, improperly emailed this Court an unformatted response, full of largely incoherent accusations of conspiratorial bias, without an opposing statement of material facts. It is accompanied by miscellaneous documents, including unsigned affidavits, scattered and illegible spreadsheets and tables, and numerous letters to Ukraine. Defendants also mailed a copy of their opposition, which was received and docketed after the response deadline had lapsed. (DE 40). For the following reasons, the Motion is granted.

## BACKGROUND

This matter arises out of an unlawful "pump-and-dump" scheme. I note that at the outset, pursuant to the Local Rules, an opponent's SOMF may dispute a fact in the movant's SOMF by supplying "evidentiary citations supporting the opponent's position" that are "limited to evidence specific to that particular dispute." S.D. Fla. L.R. 56.1(b). As Defendants have failed to properly

reply to or otherwise controvert Plaintiff's SOMF with an opposing statement of material facts, and instead allege generally that their scattered exhibits broadly vindicate them, I may deem the particular facts asserted by the SEC undisputed for purposes of this Motion. S.D. Fla. Local Rule 56.1(c) ("All material facts . . . may be deemed admitted unless controverted."). I find doing so to be proper here, as Defendants have failed to provide specific evidence contravening the exhibits supplied in the SEC's Appendix (DE 33), and have failed to clarify, per the Local Rules, which of their numerous (and for some, seemingly irrelevant) exhibits purport to be filed in response.

Plaintiff asserts that between February 8, 2018 and October 6, 2022 (the "Relevant Period"), Defendant Ballout was the controlling shareholder, CEO, CFO, and Chairman of the Board of Directors for Enerkon Solar International, Inc. ("Enerkon"), a publicly traded penny-stock company purportedly involved in power plants. (DE 32 ¶ 1). Ballout acquired controlling shares in Enerkon for $65,000.00, paid for by Defendant William Fielding ("Fielding") on Ballout's behalf. (*Id.* ¶ 27). Defendant Zayed, an Egyptian resident, had a longstanding relationship with Fielding and "knew Ballout before Enerkon's formation, and upon Enerkon's formation . . . advised Ballout on Enerkon's press releases, financial disclosures, and other matters." (*Id.* ¶ 5).

During the Relevant Period, Enerkon quoted and traded common stock under the symbol ENKS, and published disclosure statements and financial reports. (*Id.* ¶ 2). Ballout drafted and approved all of Enerkon's disclosures and financial reports, as well as all press releases and other public filings. (*Id.* ¶ 3). In so doing, Ballout sought to inflate Enerkon's stock price to qualify the company for listing on the Nasdaq stock exchange. (*Id.* ¶ 6). Much of Ballout's announcements however, drafted in concert with Zayed, were predicated on false information. For instance, On March 9, 2021, Enerkon announced its acquisition of CoviKlear, which Enerkon stated "own[ed] distribution rights to a new COVID-19 Test Device." (*Id.* ¶ 8). In reality, CoviKlear was only an

2

aspiring agent for KrowdX, the "master distributor of a Covid-19 test manufactured by Graphene Leaders Canada." (*Id.* ¶ 7). Despite repeated communications from KrowdX's executive informing Ballout that the press release was false, Ballout continued to issue statements regarding CoviKlear's rights and revenue from the Covid-19 test, including orders that were supposedly valued at "$320 Million annually." (*Id.* ¶¶ 11-13, 15). Plaintiff alleges these orders were fictitious.

This was not the only false announcement Ballout orchestrated, as on March 3, 2021, Enerkon issued a press release stating that it had agreed to purchase 122 acres of commercial land for a solar and hydrogen plant facility in Pennsylvania. (*Id.* ¶ 21). This, too, proved to be untrue, as the land referenced was zoned residential, Enerkon never submitted any documentation to the zoning authority, and the "agreement" in question was a "Capital Lease Agreement with an option for Enerkon to purchase the land for $6 million"—money Enerkon did not have. (*Id.* ¶ 23).

In addition to the false press releases, Ballout, in consultation with Zayed, falsely included in Enerkon's disclosure and financial statements millions of dollars in cash holdings, including $65,978,630 "[a]s of 6/30/2018," $109,720,325 "[a]s of 6/30/2019," and $18,191,000 "as of March 31, 2021[.]" (*Id.* ¶ 18). In reality, Enerkon's corporate bank account had no bank statements beyond $500.00 in cash, and Ballout later admitted that Enerkon "[o]n and off" had less than $1,000 in its bank account between 2018 and 2022 and never had $1,000,000. (*Id.* ¶ 19).

Finally, Plaintiff asserts that Ballout and Zayed schemed to sell Enerkon's inflated shares through a fraudulent promissory note. Through Zayed's longstanding relationship with Defendant Fielding, Fielding supplied the initial $65,000 needed for Ballout to acquire a controlling share in Enerkon. (*Id.* ¶¶ 26-27). In December 2018, Fielding contacted Zayed, stating that he had received no compensation for his funds and demanded Ballout to "clarify" the situation. (*Id.* ¶ 28). Ballout, through Enerkon, issued a promissory note—dated November 2017, but allegedly created in

February 2019 following Fielding's communication—which was purportedly issued as consideration for a $180,000 loan Fielding made to Enerkon in 2017. (*Id.* ¶ 30). Under the note's terms, if Enerkon failed to pay Fielding $180,000 by a November 30, 2018 conversion date, Fielding had the right to convert the note to a designated number of Enerkon shares. (*Id.*).

Plaintiff asserts that the note was fraudulent, as "[t]here are no company records, bank records, or other evidence that Fielding ever loaned Enerkon $180,000, much less did so in 2017." (*Id.* ¶ 31). Rather, the note was issued in 2019 as consideration for Ballout's personal $65,000 debt to Fielding, as the note was first disclosed in Enerkon's annual disclosures on September 30, 2019. (*Id.* ¶ 32). It was also a purported vehicle to sell off Enerkon stock. On January 21, 2021, Zayed emailed Fielding steps to effectuate the note's conversion clause, converting the note to Enerkon shares. (*Id.* ¶ 33). Further, on March 20, 2021, Zayed—posing as Fielding—emailed Enerkon's transfer agent to partially convert Fielding's note to unrestricted shares of Enerkon stock, attaching fabricated invoices and bank account statements for the $180,000 loan. (*Id.* ¶¶ 34-35). On May 11, 2021, Ballout similarly sent the Enerkon transfer agent a conversion request, attaching the bogus note, false invoices, a debt conversion notice, and an Enerkon board resolution. (*Id.* ¶ 37).

As a result of these communications, the false note was converted to 9 million unrestricted shares of Enerkon stock. (*Id.* ¶ 38). Thereafter, Ballout and Zayed, on Fielding's behalf, negotiated the sale of stock with a third-party investor. (*Id.* ¶ 39). Ultimately, Fielding sold a portion of his 9 million shares for a total profit of $407,000. (*Id.* ¶ 41). Prior to the sale, Fielding had agreed to provide Zayed a share of the proceeds, and sent Zayed $96,000 after the sale was completed. (*Id.* ¶ 42). On June 22, 2021, Plaintiff suspended trading in Enerkon securities, based on the false press releases. On September 23, 2024, Plaintiff filed the instant action against Ballout, Fielding, and

Zayed, asserting violations of the Securities Act and the Exchange Act. (DE 1). Now, Plaintiff moves for summary judgment against Ballout and Zayed for their role in the alleged violations.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005). "For factual issues to be considered genuine, they must have a real basis in the record." *Id.* at 1326 (internal citation omitted). "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Id.* (internal citation omitted). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

When the nonmoving party bears the burden of proof on an issue at trial, the movant may "point[] out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has met its burden under Rule 56(c), the burden shifts to the nonmoving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). "The non-movant's response must be tailored to the method by which the movant carried its initial burden." *Hinson v. United States*, 55 F. Supp. 2d 1376, 1380 (S.D. Ga. 1998), *aff'd,* 180 F.3d 275 (11th Cir. 1999). "If the movant present[s] evidence affirmatively negating a material fact, the non-movant 'must respond

with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated.'" *Id.* (citing *Fitzpatrick v. City of Altanta*, 2 F. 3d 1112, 1116 (11th Cir. 1993)). "If the movant demonstrate[s] an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was 'overlooked or ignored' by the movant, or 'come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Id.* (citing *Fitzpatrick*, 2 F. 3d at 1116)). However, "factual disputes that are irrelevant or unnecessary will not be counted" as disputes of material fact and will not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Plaintiff moves for summary judgment on three claims: (1) that Ballout violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(b); (2) that Zayed violated Section 17(a)(2) of the Securities Act of 1933; and (3) that Ballout and Zayed both violated Sections 17(a)(1) and (a)(3) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5(a) and (c) as a matter of law. (DE 31 at 8-9). I find summary judgment to be proper on all three claims, as on Plaintiff's showing there is no genuine dispute as to Defendants' culpability.

### 1. **Defendant Ballout's Violation of Rule 10b-5(b)**

First, there is no genuine dispute that Ballout violated Section 10(b) and Rule 10b-5(b) of the Exchange Act. To establish a prima facie case under Rule 10b-5(b), Plaintiff must prove that Ballout "made a material misrepresentation or materially misleading omission in connection with the sale or purchase of securities with scienter." *SEC v. Profile Sols., Inc.*, 727 F. Supp. 3d 1301, 1317-18 (S.D. Fla. 2024) (citing *SEC v. Complete Bus. Sols. Grp.*, 538 F. Supp. 3d 1309, 1329 (S.D. Fla. 2021)). Unlike a private litigant, the SEC need not prove "justifiable reliance" or "damages" in "an SEC enforcement action." *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244

(11th Cir. 2012). "Rule 10b-5 prohibits not only literally false statements, but also any omissions of material fact necessary in order to make the statements made . . . not misleading." *Profile Sols.*, 727 F. Supp. 3d at 1315 (citing *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011); 17 C.F.R. § 240.10b-5(b)). "By voluntarily revealing one fact about its operations, a duty arises for the corporation to disclose such other facts . . . to ensure that what was revealed is not 'so incomplete as to mislead.'" *Id.* at 1315–16 (citing *FindWhat Inv'r Grp.*, 658 F.3d at 1305).

Here, Plaintiff has established misrepresentations and misleading omissions in Enerkon's press releases, disclosures, and public filings, spearheaded by Ballout. It is established that Ballout made the misstatements and omissions as Enerkon's officer and representative. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 141–42 (2011). He admitted to drafting Enerkon's press releases, and to having ultimate authority over the releases and all public filings. (DE 32 ¶¶ 3, 13, 18, 21). Further, on Plaintiff's showing, Ballout made at least four material misrepresentations or omissions during his tenure, including for (1) CoviKlear's rights over and orders pertaining to a Covid-19 testing kit, (2) Enerkon's alleged purchase of land in Pennsylvania and plans to build a power plant, (3) the quantity of cash Enerkon had on hand, and (4) the existence of Enerkon's promissory note to Defendant Fielding and the existence of the underlying loan.

As to each, Plaintiff has supplied uncontroverted evidence that Ballout issued public filings which were false or misleading, as CoviKlear lacked the asserted rights over the testing kit, Enerkon had no actual plans or ability to construct the plant in Pennsylvania, Enerkon's cash on hand never exceeded $500, and the Fielding note and loan were false. (DE 32 ¶¶ 7, 11-16, 18-19, 21-24, 32-38). The misrepresentations were material, as a reasonable investor would consider each to be important in his or her investment decisions regarding Enerkon. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). The

misrepresentations were made in connection with the sale of Enerkon's securities, as they were issued to investors while Enerkon stock was being traded, and were included in public disclosure statements. *See SEC v. Radius Cap. Corp.*, 653 F. App'x 744, 750 (11th Cir. 2016). Finally, Ballout acted with scienter, which can be "established through circumstantial or direct evidence." *SEC v. Monterosso*, 756 F.3d 1326, 1335 (11th Cir. 2014). Here, Ballout knew, or was reckless in not knowing, that each misrepresentation was false, as he was Enerkon's principal officer, controlled Enerkon's bank accounts, and—in the case of the CoviKlear statement—was directly informed of his statement's falsity. By "submitting fictitiously manufactured [documents]" and false reports, Ballout "cannot plead ignorance of the fact that such reported [information] was illegitimate," and thus no "reasonably jury could doubt [he] acted with scienter. *Id.* (citing *SEC v. Lyttle*, 538 F.3d 601, 603–04 (7th Cir. 2008)). Summary judgment is therefore proper as to Defendant Ballout under Rule 10b-5(b). *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094-95 (9th Cir. 2010).

Defendants supply no compelling argument to the contrary. In their response, Defendants assert generally that they have always complied with the law, and that both they and Plaintiff have unspecified "records" that would vindicate them. Moreover, they lob numerous conspiratorial claims against Radio Free Europe for having "instigated" this case against them, and insist that all allegations from the SEC are the product of "powerful spying and media tools" resulting in a "False News article." (DE 40 at 11). On review of this tangled web of assertions, Defendants offer no persuasive contention or contravening evidence against the substance of Plaintiff's claims. Indeed, the response makes no mention whatsoever of the assertion that Defendant Ballout misrepresented Enerkon's financial holdings and bank account balance, which the SEC has provided. (DE 33-3 at 23-25, 31-33; DE 33-1 at 56-133). This uncontroverted showing demonstrates that there is no genuine dispute as to Ballout's material misrepresentations of Enerkon's business and finances.

2. **Defendant Zayed's Violation of Section 17(a)(2)**

Second, there is no genuine dispute as to Defendant Zayed's culpability under Section 17(a)(2) of the Securities Act. To establish a prima facie case under Section 17(a)(2), Plaintiff must prove by a preponderance of the evidence that Zayed: (1) obtained money or property; (2) by means of a material misstatement or omission; (3) in connection with the offer or sale of a security in interstate commerce; (4) with the requisite mental state. 15 U.S.C. § 77q(a); *SEC v. Westhead*, 733 F. Supp. 3d 1284, 1300 (S.D. Fla. 2024). Plaintiff need only show negligence for a Section 17(a)(2) violation. *SEC v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007). Although Section 17(a)(2) liability requires a material misstatement or misleading omission, it does not require a showing that Zayed was the "maker" of such misstatement or omission. *See Janus. SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 797 (11th Cir. 2015).

Here, Defendant Zayed sent materially false or misleading statements to Enerkon's transfer agent in order to convert the false promissory note to Enerkon stock. (DE 32 ¶¶ 34-37). Using an email account in Fielding's name, Zayed forwarded documents that (i) falsely represented that Fielding made three payments totaling $180,000 to Enerkon in November 2017, when in fact, Fielding's actual bank account statement shows no such payments were made; and (ii) falsely represented that Fielding's promissory note was entered into in November 2017, when in fact, it was created years later and backdated. (*Id.* ¶¶ 34-36). These misrepresentations were per se material, as they misled the transfer agent about the validity of the note, and requisite holding period. *See SEC v. Sayid*, No. 17-2630, 2019 WL 6307367, at *1, *7 (S.D.N.Y. Nov. 25, 2019), *aff'd*, 860 F. App'x 18 (2d Cir. 2021). Further, Zayed personally received $96,000 from Fielding as proceeds of the sale. (DE 32 ¶¶ 41-42). These actions were done "in connection with" the sale of a security, *see Radius Cap. Corp.*, 653 F. App'x at 750, and were at least negligent on Zayed's

9

part, as a reasonably prudent person would not have acted as Zayed did—fabricating documents and creating a fake website and email address. (DE 32 ¶¶ 13-15, 33-35); *see SEC v. Dain Rauscher, Inc.*, 254 F. 3d 852, 857 (9th Cir. 2001). Summary judgment against Zayed is therefore proper.

### 3.   Defendant Ballout's and Zayed's Collective Violations of Securities Law

Finally, there is no genuine dispute that Defendants Ballout and Zayed are liable for violations of Sections 17(a)(1) and (3) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rules 10b-5(a) and (c). Sections 17(a)(1) and (3) of the Securities Act prohibit, in the offer or sale of a security: employing a fraudulent device, scheme, or artifice to defraud; or engaging in a transaction, practice, or course of business which operates or would operate as a fraud on the purchaser. 15 U.S.C. §§ 77q(a)(1), (3). Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) prohibit essentially the same conduct in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b); 17 C.F.R. §§ 240.10b-5(a), (c); *United States v. Naftalin*, 441 U.S. 768, 778 (1979). Section 17(a)(1) and Rule 10b-5(a) and (c) require "scienter," whereas Section 17(a)(3) requires only a showing of negligence. *Westhead*, 733 F. Supp. 3d at 1301-02.

Here, Defendants emailed Enerkon's transfer agent documents containing false statements to convert a false promissory note to Enerkon stock, which was then "dumped" to an outside investor. This conduct violates Sections 17(a)(1) and (3) and Rules 10b-5(a) and (c). *See Lorenzo v. SEC*, 587 U.S. 71, 74 (2019) ("[One who] disseminate[s] false or misleading statements to potential investors with the intent to defraud, can be found to have violated . . . Rule 10b-5, subsections (a) and (c), as well as . . . § 17(a)(1) of the Securities Act."). These acts were compounded by Ballout's efforts to artificially inflate Enerkon's stock through deceptive tactics already discussed prior, *see supra*; (DE 32 ¶¶ 21-25, 27-29, 31, 37-40), and by Zayed's impersonation of Fielding through a falsified email account, (*id.* ¶¶ 13-16, 33-36). This conduct

was also in connection with the sale of a security, in the form of Enerkon stock. Finally, once more, there is no genuine dispute that Defendants acted with the requisite state of mind, as both Ballout and Zayed repeatedly (and, at a minimum, negligently) fabricated documents, created false websites and email addresses, and discussed plans to "get MORE free shares from BEN [Ballout]" with Defendant Fielding. (DE 32 ¶¶ 13-16, 33-36). The submission of "fictitiously manufactured [documents]" establishes that no "reasonably jury could doubt they acted with scienter." *Monterosso*, 756 F.3d at 1335. As such, summary judgment against both Defendants is warranted under Sections 17(a)(1) and (3) and Rules 10b-5(a) and (c). *Lorenzo*, 587 U.S. at 74.

## CONCLUSION

Plaintiffs have supplied uncontroverted evidence establishing Defendants' liability under the Securities Act and the Exchange Act. There is therefore no genuine dispute of material fact as to Defendants' liability, and summary judgment for the SEC is warranted.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Plaintiff's Motion for Partial Summary Judgment (DE 31) is **GRANTED**.

(2) Final judgment for Plaintiff and against Defendants will be entered by separate order.

(3) Pursuant to the Motion's prayer for relief, **on or by May 19, 2025**, Plaintiff **SHALL FILE** a motion for remedies addressing the relief sought.

**SIGNED** in Chambers at West Palm Beach, Florida, this 7 day of May, 2025.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT COURT

CC: Counsel of Record

Benjamin Ballout
45429 Brunswick
Canton, MI 48187

11