**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CIVIL CASE NO. 24-81170-CV-MIDDLEBROOKS-MATTHEWMAN

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

    v.

BENJAMIN BALLOUT,
MOHAMED ZAYED, and
WILLIAM FIELDING,

              Defendants.

**<u>PLAINTIFF'S MOTION FOR REMEDIES AND FOR ENTRY OF FINAL JUDGMENT
AGAINST DEFENDANTS BENJAMIN BALLOUT AND MOHAMED ZAYED AND
MEMORANDUM OF LAW IN SUPPORT</u>**

Dated:  May 19, 2025

                    Respectfully submitted,

                    */s/ Patrick Disbennett*_____
                    Patrick Disbennett
                    S.D. Fla. Special Bar ID A5503234
                    Tyson Lies
                    S.D. Fla. Special Bar ID A5503320
                    Securities and Exchange Commission
                    801 Cherry Street, Suite 1900
                    Fort Worth, Texas 76102
                    Tel: 817-266-9633 (Disbennett)
                    Tel: 682-217-3580 (Lies)
                    disbennettpa@sec.gov
                    liest@sec.gov

                    *Attorneys for Plaintiff*

i

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii-vii

I.    INTRODUCTION ............................................................................................................1

II.   ARGUMENT AND AUTHORITIES.................................................................................2

    A.  The Court Should Enjoin Defendants From Violations of the
        Federal Securities Laws ...........................................................................................2

         1.  Success on the merits ....................................................................................3

         2.  Likelihood of irreparable harm .....................................................................3

         3.  Balance of Equities and the Public Interest ..................................................7

         4.  Specificity and Fair Notice ...........................................................................7

    B.  Penny-Stock Bars Against Defendants Are Warranted ...............................................8

    C.  An Officer-and-Director Bar Against Ballout is Also Warranted ...............................11

    D.  The Court Should Order Zayed to Pay Disgorgement and Prejudgment Interest..........13

         1.  Disgorgement: $96,000.............................................................................13

         2.  Prejudgment interest: $25,288.33 ...............................................................14

    E.  The Court Should Order Zayed and Ballout to Pay Civil Penalities ............................15

         1.  Legal standard for imposing statutory civil penalties ........................................15

         2.  The Court should impose a $460,928 civil penalty against each Defendant ......17

   III.  CONCLUSION................................................................................................................20

## TABLE OF AUTHORITIES

**Federal Cases**

*CFTC v. Tayeh*,
   848 Fed. App'x 827 (11th Cir. 2021) ...................................................................... 14

*FTC v. Silueta Distribs.*,
   No. C 93-4141 BAC, 1994 WL 387881 (N.D. Cal. July 11, 1994) ..........................4

*FTC v. Your Yellow Pages, Inc.*,
   No. 14-cv-22129 (S.D. Fla. July 1, 2024) ................................................................4

*Liu v. SEC*,
   140 S. Ct. 1936 (2020) ....................................................................................... 13, 14

*In re Rsrv. Mgmt. Co.  (In re Rsrv. Fund Secs. & Derivative Litig.* ),
   No. 09 Civ. 4346 (PGG), 2013 WL 5432334 (S.D.N.Y. Sept. 30, 2013) ............... 16

*SEC v. Ahmed*
   72 F.4th 379 (2d. Cir. 1972) ....................................................................................7

*SEC v. Almagarby*,
   92 F.4th 1306 (11th Cir. 2024) ........................................................................... 4, 5

*SEC v. BIH Corp.*,
   No. 2:10-CV-577-FTM-29, 2014 WL 7499053 (M.D. Fla. Dec. 12, 2014) .................. 10, 11

*SEC v. Calvo*,
   378 F.3d 1211 (11th Cir. 2004) .................................................................... 4, 5, 6, 14

*SEC v. Caputo*,
   No. 22-cv-61693-JEM/Becerra, 2023 WL 3740926 (S.D. Fla. May 17, 2023) .............. 10, 11

*SEC v. Carriba Air, Inc.*,
   681 F.2d 1318 (11th Cir. 1982) ........................................................................... 4, 5

*SEC v. Carrillo*,
   325 F.3d 1268 (11th Cir. 2003) ...........................................................................14

*SEC v. Chappell*,
   107 F.4th 114 (3d Cir. 2024) ............................................................................. 3, 7

*SEC v. Coates*,
   137 F. Supp. 2d 413 (S.D.N.Y. 2001) .................................................................. 19

*SEC v. Complete Bus. Sols. Grp., Inc.*,
No. 20-CV-81205-RAR, 2024 WL 4826059 (S.D. Fla. Nov. 18, 2024) .................... 17-18, 18

*SEC v. Converge Glob., Inc.*,
No. 04-80841-CIV-MIDDLEBROOKS/JOHNSON, 2006 WL 907567 (S.D. Fla. Mar. 9,
2006) ......................................................................................................................... 9, 10, 11

*SEC v. ETS Payphones, Inc.*,
408 F.3d 727 (11th Cir. 2005) ................................................................................ 14

*SEC v. First Pac. Bancorp*,
142 F.3d 1186 (9th Cir. 1998) ................................................................................ 12

*SEC v. Fowler*,
6 F.4th 255 (2d Cir. 2021) ...................................................................................... 14

*SEC v. Gentile*,
939 F.3d 549 (3d Cir. 2019) .................................................................................... 3

*SEC v. Ginsburg*,
362 F.3d 1292 (11th Cir. 2004) .............................................................................. 5

*SEC v. Goble*,
682 F.3d 934 (11th Cir. 2012) ..................................................................... 3, 7-8, 8

*SEC v. Hall*,
759 F. App'x 877 (11th Cir. 2019) ......................................................................... 11

*SEC v. Huff*,
758 F. Supp. 2d 1288 (S.D. Fla. 2010) ...................................................... 12, 13, 15

*SEC v. Keener*,
644 F. Supp. 3d 1290 (S.D. Fla. 2022) ................................................................... 8

*SEC v. Kon*,
No. 23-10738, 2024 WL 2271183 (11th Cir. May 20, 2024) ................................. 20

*SEC v. Lake Havasu Ests.*,
340 F.Supp. 1318 (D. Minn. 1972) .......................................................................... 4

*SEC v. Manor Nursing Centers, Inc.*,
458 F.2d 1082 (2d Cir. 1972) ................................................................................... 7

*SEC v. MCC Int'l Corp.*,
No. 22-CV-14129, 2025 WL 1295061 (S.D. Fla. Feb. 25, 2025) ................................. 13, 17

iv

*SEC v. McClintock*,
    No. 1:12-CV-04028-SCJ, 2015 WL 12696101 (N.D. Ga. Oct. 28, 2015) ............................ 18

*SEC v. Miller*,
    744 F. Supp. 2d 1325 (N.D. Ga. 2010) .................................................................. 18

*SEC v. Monterosso*,
    756 F.3d 1326 (11th Cir. 2014) ............................................................ 15, 16, 20

*SEC v. Monterosso*,
    No. 07-61693-CIV, 2012 WL 12950028 (S.D. Fla. Feb. 16, 2012) ........................................ 17

*SEC v. Mooney*,
    No. 1:22-cv-02320-SDG, 2025 WL 901802 (N.D. Ga. Mar. 25, 2025) ................................ 18

*SEC v. Moran*,
    944 F. Supp. 286 (S.D.N.Y. 1996) ...................................................................... 15

*SEC v. Patel*,
    61 F.3d 137 (2d Cir. 1995) ............................................................................ 12

*SEC v. Pattison*,
    No. C-08-4238 EMC, 2011 WL 723600 (N.D. Cal. Feb. 23, 2011) ...................................... 19

*SEC v. Profile Sols., Inc.*,
    727 F. Supp. 3d 1301 (S.D. Fla. 2024) ........................................................ 5, 9, 11

*SEC v. Revolutionary Concepts, Inc.*,
    No. 21-10984, 2022 WL 386085 (11th Cir. Feb. 9, 2022) .............................................. 18

*SEC v. Solow*,
    554 F. Supp. 2d 1356 (S.D. Fla. 2008) ................................................................ 17

*SEC v. Star Chain, Inc.*,
    No. 1:21-CV-03944-JPB, 2023 WL 1785764 (N.D. Ga. Feb. 3, 2023) ................................ 18

*SEC v. Warren*,
    534 F.3d 1368 (11th Cir. 2008) ................................................................... 14, 20

*Starbucks Corp. v. McKinney*,
    144 S. Ct. 1570 (2024) ................................................................................. 3

*United States v. Kahen*,
    No. CV 20-00474, 2020 WL 1697974 (E.D.N.Y. Jan. 28, 2020) ...................................... 4

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ................................................................................. 2-3, 7


## **Federal Statutes**

Securities Act 1933

Section 17(a)
   [15 U.S.C. § 77q(a)] ........................................................................... 1, 18

Section 20(d)
   [15 U.S.C. § 77t(d)] ........................................................................ 15, 16, 17

Section 20(e)
   [15 U.S.C. § 77t(e)] ........................................................................ 2, 11, 13

Section 20(g)
   [15 U.S.C. § 77t(g)] ............................................................................ 2, 8, 9

Securities Exchange Act of 1934

Section 3(51)(A)
   [15 U.S.C. § 78c(51)(A)] .......................................................................... 9

Section 10(b)
   [15 U.S.C. § 78j(b)] ........................................................................... 1, 5, 18

Section 12
   [15 U.S.C. § 78l] ..................................................................................... 13

Section 15(a)(1)
   [15 U.S.C. § 78o(a)(1)] ............................................................................. 8

Section 15(d)
   [15 U.S.C. § 78o(d)] ............................................................................... 13

Section 21(d)
   [15 U.S.C. § 78u(d)] .......................................... 2, 8, 9, 11, 13, 13-14, 15, 16, 17

Securities Exchange Act of 1934 Rules

Rule 3a51-1
   [17 C.F.R. § 240.3a51-1] .......................................................................... 9

Rule 10b-5(b)
    [17 C.F.R. § 240.10b-5(b)] ......................................................................... 1, 5, 18

Federal Rules of Civil Procedure
    Fed. R. Civ. P. 65 ........................................................................................ 3, 7, 8

Other

Restatement (Third) of Restitution & Unjust Enrichment § 51 cmt. h (2011) ........................... 14

Determination of Rate of Interest, 26 U.S.C. § 6621(a)(2) (2018) ............................... 15

Adjustment of Civil Monetary Penalties, 17 C.F.R. § 201.1001(a) (2017)................................. 15

Pursuant to the Court's May 8, 2025 Order on Motion for Summary Judgment (DE 41), Plaintiff Securities and Exchange Commission ("**SEC**" or "**Plaintiff**") moves for remedies and for entry of final judgments against Defendants Benjamin Ballout ("**Ballout**") and Mohamed Zayed ("**Zayed**") (together, "**Defendants**"), and respectfully shows as follows:

## I.       <u>INTRODUCTION</u>

On May 8, 2025, the Court granted the SEC's motion for partial summary judgment against Defendants and found that there is no genuine dispute of material fact as to Defendants' liability for violating the anti-fraud provisions of the federal securities laws.[1] (DE 41 at 11).

As the Court explained, this case "arises out of an unlawful 'pump-and-dump' scheme" involving a "publicly traded penny-stock company" called Enerkon Solar International ("**Enerkon**"). (*Id.* at 1-2). As CEO and CFO of Enerkon, Ballout "sought to inflate Enerkon's stock price" by making "at least four material misrepresentations or omissions" in Enerkon's press releases and disclosures with scienter. (*Id.* at 2, 7-8). Ballout made these misstatements "in concert with Zayed," who "fabricated documents" and "created false websites and email addresses" in furtherance of the scheme. (*Id.* at 2-4, 10-11). Defendants also schemed to convert a fraudulent promissory note into Enerkon stock, which was sold at inflated prices, with Zayed receiving $96,000 of the sale proceeds. (*Id.* at 3-4). Defendants' egregious misconduct resulted in substantial losses to investors and created the risk of significant additional losses that were prevented when the SEC suspended trading in Enerkon securities on June 22, 2021. (*Id.* at 4); (DE 33-1 at App.043-044 [Orlov Rep. ¶ 38]).

---

[1] In particular, the Court found, as a matter of law, that: (1) Ballout violated Section 10(b) of the Securities Exchange Act of 1934 ("**Exchange Act**") [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F. R. § 240.10b-5(b)]; (2) Zayed violated Section 17(a)(2) of the Securities Act of 1933 ("**Securities Act**") [15 U.S.C. § 77q(a)]; and (3) both Defendants violated Sections 17(a)(1) and 17(a)(3) of the Securities Act, Section 10(b) of the Exchange Act, and Rules 10b-5(a) and (c) thereunder. (DE 41 at 6-11).

In its order granting the SEC summary judgment on liability, the Court also ordered that "[f]inal judgment for Plaintiff and against Defendants will be entered by separate order" and ordered the SEC to file a motion for remedies addressing the relief sought against Defendants. (*Id.* at 11). Based on the record in this case,[2] the SEC asks the Court to enter final judgments[3] against Defendants providing the following remedies:

1. a permanent injunction against each Defendant enjoining each from future violations of the federal securities laws that each violated by engaging in specified prohibited conduct as described below;

2. a penny-stock bar against each Defendant enjoining each from participating in a penny-stock offering, pursuant to Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)] and Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)];

3. an officer-and-director bar against Ballout enjoining him from serving as an officer or director of a public company, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

4. disgorgement against Zayed in the amount of $96,000, representing the ill-gotten gains he received as a result of his violations, plus prejudgment interest of $25,288.33 on that disgorgement amount, for a total of $121,288.33; and

5. a civil penalty of $460,928 against each Defendant.

## II.     ARGUMENT AND AUTHORITIES

### A.     The Court Should Enjoin Defendants From Violations of the Federal Securities Laws

To obtain a permanent injunction against future violation of the securities laws, the SEC must demonstrate that: (1) the SEC has actually succeeded on the merits, (2) irreparable harm will

---

[2] The SEC supports this Motion with the following, each of which is incorporated by reference herein: (1) Exhibits 1-9 attached hereto; (2) Plaintiff's Statement of Material Facts in Support of its Motion for Partial Summary Judgment (DE 32, "**SOMF**"); and (3) Appendix in Support of Plaintiff's Motion for Summary Judgment (DE 33, 33.1, 33.2, 33.3, hereafter "**App.**"). The SEC also cites the Court's Order on Summary Judgment (DE 41). Although that Order "deem[ed] particular facts asserted by the SEC undisputed for purposes of" the SEC's Motion for Partial Summary Judgment (*id.* at 2), the Court can make the same factual findings, as needed, based on the undisputed summary judgment evidence and other evidence submitted for purposes of this Motion.

[3] The SEC is filing proposed final judgments against each Defendant with this Motion. (*See* Ex. 10, 11). Also, the SEC will email the Court Word versions of a proposed order granting this Motion and the proposed final judgments.

likely result in the absence of the injunction, (3) the balance of the equities tips in the SEC's favor, and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (factors pertinent in assessing preliminary or permanent injunctive relief); *see also Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (noting that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity," which, with regard to injunctive relief, includes using "the traditional four-part test" set forth in *Winter*).

Additionally, "[e]very order granting an injunction . . . must: (A) state the reasons why it issued;[4] (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts sought to be restrained or required." *See* FED. R. CIV. P. 65(d); *see also SEC v. Goble*, 682 F.3d 934, 952 (11th Cir. 2012) ("[A] broad, but properly drafted injunction, which largely uses the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do.").

The SEC meets all of the prerequisites for permanent injunctive relief against Defendants.

1.     **Success on the merits**

In this case, the Court granted the SEC's motion for partial summary judgment and found, as a matter of law, that Defendants violated the federal securities laws. (DE 41 at 6-11). Thus, the SEC has succeeded on the merits of its claims.

---

[4] To properly issue an injunction, the Court must make appropriate findings of fact and conclusions of law. *See, e.g.*, *AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1327 (11th Cir. 2022) ("If the district court intended to enter a permanent injunction, it had to make the appropriate findings of fact and draw the proper conclusions of law."). Pursuant to this Court's Order Referring Case and Setting Trial Date (DE 12 at 4), the SEC is submitting to the Court via email a proposed order granting this Motion that includes proposed findings of fact and conclusions of law.

2.       **Likelihood of irreparable harm**

The likelihood of irreparable harm is demonstrated by the SEC's having shown (see below) the likelihood of defendant's future violations. To obtain an injunction against further securities law violations the SEC must show a "likelihood of recurrence" (*SEC v. Gentile*, 939 F.3d 549, 555-58 (3d Cir. 2019)), and such "cognizable risk of future harm" satisfies the "irreparable harm requirement." *Chappell*, 107 F.4th at 128-29 (discussing *Gentile*). District courts granting injunctions under the four-part test also have recognized that the government's showing of a likelihood of future violations satisfies the irreparable harm requirement. *See, e.g., FTC v. Your Yellow Pages, Inc.*, No. 14-cv-22129, c, at *1 (S.D. Fla. July 1, 2014) ("There is good cause to believe that immediate and irreparable harm will result from continued violations by [defendant] of the FTC Act unless he is restrained and enjoined."); *FTC v. Silueta Distributors, Inc.*, No. 93-cv-4141, 1994 WL 387881, at *1-*2 (N.D. Cal. July 11, 1994) (finding "substantial risk of irreparable harm to the public from defendants' continuing violations of law"). Even courts that previously concluded irreparable harm is unnecessary in government enforcement actions have alternatively held that demonstrating a likelihood of future violations is sufficient to show irreparable harm. *See, e.g.*, *SEC v. Lake Havasu Ests.,* 340 F. Supp. 1318, 1324 (D. Minn. 1972); *United States v. Kahen*, No. 20-cv-00474, 2020 WL 1697974, at *1 (E.D.N.Y. Jan. 28, 2020).

In determining whether there is a reasonable likelihood of future violations, courts in the Eleventh Circuit consider the following:

> [the] egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

*SEC v. Ibrahim Almagarby*, 92 F.4th 1306, 1321 (11th Cir. 2024) (quoting *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004); *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982))

4

(brackets in original)). The SEC need not prove every factor in order to obtain permanent injunctive relief. *Calvo*, 378 F.3d at 1216.

Under the facts of this case, each of the considerations stated above shows that Defendants are likely to violate the anti-fraud provisions of the securities laws in the future.

First, this Court found, as a matter of law, that Defendants acted with the requisite scienter in violating the federal securities laws. (*See* DE 41 at 8, 11 (finding "Ballout knew, or was reckless in not knowing, that each misrepresentation was false," and that "no reasonabl[e] jury could doubt [each Defendant] acted with scienter" through Defendants' conduct violating Rule 10b-5(a) and (c) of the Exchange Act) (citation omitted)); *see also Ibrahim Almagarby*, 92 F.4th at 1322 (citing *Calvo*, 378 F.3d at 1216) (noting that the Eleventh Circuit has characterized "scienter...as an important factor" in the injunctive relief analysis).

Second, Defendants' violations were both egregious and recurrent. Based on the undisputed summary judgment evidence, the Court found that "Ballout made at least four material misrepresentations or omissions during his tenure" as CEO of Enerkon, (DE 41 at 7), and that "Zayed repeatedly...fabricated documents, created false websites and email addresses, and discussed plans to 'get MORE free shares from BEN [Ballout]' with Defendant [William] Fielding," pursuant to Defendants' fraudulent pump-and-dump scheme. (*Id.* at 11). These violations occurred over at least three years between June 2018 (when Ballout misstated Enerkon's "cash" in its June 30, 2018 OTC Disclosure) and June 2021 (when the SEC suspended trading in Enerkon securities). (*Id.* at 3-4). These undisputed facts establish both the egregious and recurrent nature of Defendants' conduct. *See, e.g.*, *SEC v. Profile Sols., Inc.*, 727 F. Supp. 3d 1301, 1319 (S.D. Fla. 2024) (finding factors supported permanent injunction "given Tuckers misconduct...which spanned from October 2018 to March 2019" and primarily involved material

misstatements in press releases); *Carriba Air*, 681 F.2d at 1322 (finding district court properly issued permanent injunction, where defendants "knowingly made material misrepresentations and at least recklessly made material omissions on documents submitted to the SEC"); *SEC v. Ginsburg*, 362 F.3d 1292, 1304 (11th Cir. 2004) (finding all factors weighed in favor of permanent injunction against future violations, where defendant engaged in egregious misconduct on "two separate occasions").

<u>Third</u>, Defendants have never acknowledged any of their wrongdoing in this case. Instead, they have repeatedly tried to blame others for the claims brought against them. Indeed, Defendants' opposition to summary judgment largely ignored evidence of their wrongdoing and "lob[bed] numerous conspiratorial claims against Radio Free Europe for having 'instigated' this case against them." (DE 41 at 8 (quoting DE 40 at 11)); *see also Calvo*, 378 F.3d at 1216 (finding there was "a reasonable likelihood that [the defendant] will engage in wrongful actions in the future," where the defendant "repeatedly failed to acknowledge the wrongful nature of his conduct").

<u>Fourth</u>, because Defendants refuse to acknowledge that they violated the federal securities laws, they cannot provide any reasonable assurances that future violations will not occur.

<u>Lastly</u>, both Defendants are in positions that may present opportunities for future violations. As to Ballout, he continues to advertise himself as "a visionary leader and expert in international trade and policy" with decades of experience in "finance" and other industries, and claims to "serv[e] on the boards of multiple multinational corporations" involved in "global commercial activity within the U.S. and beyond." (Ex. 3). His firm's website—which Ballout owns and controls—advertises that its "areas of expertise" include raising "capital" or "funds" for clients, and the website lists "investment services" among the services the firm purportedly offers. (Ex. 4, 5). As to Zayed, he testified in his deposition that he is still acting as a consultant, has

business contacts in the United States, and does business in the United States and across the world. (Ex. 9, Zayed Depo. Tr. 13:10-14:8). He continues to be associated with organizations in roles similar to the role he served with Enerkon. (Ex. 6, 7). These activities create opportunities for Zayed to impact other companies' securities as he did Enerkon. Finally, Zayed engaged in the conduct at issue in this case after a federal criminal indictment was issued against him in 1997 for wire fraud, and after he was sued by the SEC in 1998 for securities fraud in connection with the promotion and sale of a company's stock unrelated to this case. (DE 32 ¶ 4 & n.7). Thus, all relevant factors support the conclusion that there is a reasonable likelihood that Defendants' securities law violations will be repeated.

### 3.    Balance of Equities and the Public Interest

The remaining two *Winter* factors (balancing the equities and consideration of the public interest) are easily met here. The third factor, balancing the equities, favors the SEC, because "investors need[ ] the protection of an injunction" notwithstanding the private interests of the defendant, especially in light of the likelihood of their future fraud violations. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972), *abrogated on other grounds*, *SEC v. Ahmed*, 72 F.4th 379, 406-07 (2d Cir. 2023). Defendants' repeated violations and refusal to acknowledge any wrongdoing demonstrate the strong interest in granting injunctive relief to protect investors. That interest heavily outweighs the minimal burden, if any, on Defendants in complying with injunctive relief that prohibits them from engaging in unlawful conduct.

Lastly, "[a]s a practical matter, if a plaintiff demonstrates both actual success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Chappell*, 107 F.4th at 139. Clearly, the public interest in enforcing Congress' antifraud provisions favors enjoining Defendants from further engaging in securities fraud.

### 4.        Specificity and Fair Notice

Rule 65(d) provides that "[e]very order granting an injunction…must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts sought to be restrained or required." *See* FED. R. CIV. P. 65(d). Eleventh Circuit law likewise requires that judgments for injunctive relief describe in reasonable detail the acts or conduct sought to be restrained. *See Goble*, 682 F.3d at 951-52. The *Goble* court, while questioning whether merely reciting the language of a statute in an injunction adequately informs a defendant of the prohibited conduct, also explained that "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." *Id.* at 952.

Here, the SEC asks the Court to enter final judgments against Defendants that "largely us[e]" the language of the subject statutes, prohibit conduct directly tied to the violations they committed, and sufficiently notify Defendants of the prohibited conduct. Indeed, this Court's Final Judgment against William Fielding (DE 14) demonstrates the specificity and fair notice of the injunctive relief requested. In particular, the Final Judgment against Fielding includes permanent injunctive relief against Fielding that uses the language of the statutes he is enjoined from violating, but that also provides the following additional specificity as to the enjoined conduct:

> by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

(DE 14 ¶¶ I, II). This language, which the SEC proposes that the Court also include in the permanent injunctions in the final judgments against Defendants, provides more than adequate specificity and fair notice to Defendants to satisfy Rule 65(d). *See SEC v. Keener*, 644 F. Supp. 3d

1290, 1302 (S.D. Fla. 2022) (finding permanent injunction that "essentially tracks the language of Section 15(a)(1) of the Exchange Act," but also includes instruction beyond the statutory language on "the activity that" violates the injunction, avoids the concerns raised in *Goble*).

**B.     Penny-Stock Bars Against Defendants Are Warranted**

Under Section 20(g) of the Securities Act and Section 21(d)(6) of the Exchange Act, the Court is authorized to bar any person from participating in future offerings of penny stocks, "permanently or for such period of time as the court shall determine," if that person was participating in the offering of a penny stock at the time of the misconduct. 15 U.S.C. §§77t(g)(1), 78u(d)(6)(A); *see also SEC v. Converge Glob., Inc.*, No. 04-80841-CIV, 2006 WL 907567, at *5 (S.D. Fla. Mar. 9, 2006) (Middlebrooks, J.) (finding a permanent penny-stock bar warranted). A "person participating in an offering of penny stock" includes "any person engaging in activities with a broker, dealer or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of, any penny stock." 15 U.S.C. §§77t(g)(2), 78u(d)(6)(B).

At all relevant times, Enerkon's stock qualified as "penny stock," because its price was less than five dollars per share and none of the exceptions under Rule 3a51-1 of the Exchange Act applied. *See SEC v. Profile Sols., Inc.*, 727 F. Supp. 3d 1301, 1319 (S.D. Fla. 2024) ("The term 'penny stock' refers to an equity security with a price of less than five dollars."); 15 U.S.C. § 78c(51)(A); 17 C.F.R. § 240.3a51-1. Indeed, in granting summary judgment on liability, the Court listed among the undisputed facts that Enerkon was "a publicly traded penny-stock company …." (DE 41 at 2 (citing DE 32 [SOF] ¶ 1)).[5]

Additionally, at the time of their misconduct, Defendants were "participating in an offering of penny stock," *i.e.*, Enerkon stock. 15 U.S.C. §§77t(g)(2), 78u(d)(6)(B). Defendants engaged in

---

[5] (*See also* DE 33-3 at App.484 [Martinez Decl. ¶ 3]; DE 33-1 at App.032, App.053, App.055 [Orlov Rep. ¶ 12 & Exs. 2, 4 thereto]).

activities with Enerkon, a penny-stock "issuer," for purposes of "inducing or attempting to induce the purchase or sale of" Enerkon stock through Enerkon's false and misleading press releases, OTC Disclosure Statements, and public filings that Defendants participated in issuing. *Id.*[6] Defendants were also engaged in activities with Enerkon for purposes of "issuing" Enerkon stock to Fielding through the conversion of his fraudulent promissory note. *Id.*[7] Thus, penny-stock bars against both Defendants are statutorily authorized.

In addition, permanent penny-stock bars against Defendants are warranted under the circumstances and facts of this case. In considering whether to impose a penny-stock bar and the length of such a bar, courts consider similar factors as those discussed *supra* under Section II.A.2 with respect to permanent injunctive relief, including "the nature of the defendant's conduct and the likelihood that his occupation and experience will present further opportunities to violate the securities laws." *SEC v. BIH Corp.*, No. 2:10-CV-577-FTM-29, 2014 WL 7499053, at *6 (M.D. Fla. Dec. 12, 2014) (citing *Converge Global*, 2006 WL 907567, at *5 (Middlebrooks, J.)); *see also SEC v. Caputo*, No. 22-CV-61693-JEM, 2023 WL 3740926, at *5 (S.D. Fla. May 17, 2023) (finding permanent penny-stock bar appropriate because there was a "reasonable likelihood that [defendant] will engage in unlawful conduct related to penny stocks in the future").

Here, for the same or similar reasons that permanent injunctions are warranted, the Court should find that permanent penny-stock bars against Defendants are appropriate in this case. As discussed, Defendants' violations in this case were egregious, recurrent, and done with scienter. (*See* DE 41 at 7-8, 10-11). Their fraudulent scheme likely would have continued had the SEC not suspended trading in Enerkon securities in June 2021—just months before Zayed told Fielding

---

[6] (*See* DE 41 at 2-3, 6-8, 10-11; DE 32 [SOF] ¶¶ 6-25, 40).

[7] (*See* DE 41 at 3-4, 9-11; DE 32 [SOF] ¶¶ 27-39, 41-42).

they were going to "get MORE free shares from BEN [Ballout] then after that and DO IT AGAIN …" (DE 32 [SOF], ¶¶ 33, 44). Defendants have refused to acknowledge any wrongdoing, repeatedly blame others for their own misconduct, and continue to occupy positions that present opportunities to engage in unlawful conduct in connection with penny stocks or penny-stock issuers. (DE 41 at 8 (citing DE 40 at 11); (Ex. 3-7)). Zayed's pending federal criminal indictment for wire fraud, and the lawsuit brought against him by the SEC in 1998 for securities fraud, did not deter him from engaging in fraud in this case, providing further reason to believe that he will engage in unlawful conduct in connection with penny stocks in the future. (DE 32 ¶ 4 & n.7).

Accordingly, permanent penny-stock bars against Defendants are appropriate in this case.[8] *See, e.g.*, *BIH Corp.*, 2014 WL 7499053, at *6 (imposing penny-stock bar against "the mastermind of a pump and dump scheme," because "the nature of [defendant's] misconduct, combined with his apparent unwillingness to acknowledge the wrongness of his actions, indicate a reasonable likelihood that he will engage in future penny stock violations"); *SEC v. Profile Sols., Inc.*, 727 F. Supp. 3d 1301, 1319 (S.D. Fla. 2024) (imposing a permanent penny-stock bar based on same facts discussed warranting a permanent injunction); *Converge Global*, 2006 WL 907567, at *5 (Middlebrooks, J.)); *Caputo*, 2023 WL 3740926, at *5.

## C.    An Officer-and-Director Bar Against Ballout is Also Warranted

Under Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act, the Court has authority to bar Defendant Ballout, permanently or for such period of time that the Court determines, from acting as an officer or director of an issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act, if the Court finds Ballout's "conduct demonstrates unfitness to serve

---

[8] The SEC further incorporates by reference hereunder the arguments, findings, and evidence cited *supra* under section II.A pertaining to the permanent injunctive relief requested as further supporting the penny-stock bars requested.

as an officer or director of" such a company. 15 U.S.C. §§77t(e), 78u(d)(2). "District courts are afforded substantial discretion in deciding whether to impose an injunction that bars an individual from serving as an officer or director." *SEC v. Hall*, 759 Fed. App'x 877, 884 (11th Cir. 2019). Factors courts consider in exercising this discretion include: "(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Id.* (citing *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1356 (S.D. Fla. 2010); *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998)).

Here, the Court should permanently bar Ballout from serving as an officer or director, because he is manifestly unfit to serve in such a trust-based role and the relevant factors strongly weigh in favor of a permanent bar. Between February 2018 and October 2022, Ballout served in a position of trust as the CEO, CFO, and Chairman of Enerkon, a company that traded publicly on OTC Markets. (DE 32 [SOF] ¶ 1). During that period, he repeatedly abused his position of trust by making several material misrepresentations and misleading omissions to investors with scienter. (DE 41 at 6-8, 10-11). As discussed, he has never acknowledged any wrongdoing and sought to blame others for his own misconduct. (*See, e.g.*, DE 41 at 11). During his depositions in this case, he repeatedly refused to answer relevant questions about the allegations against him and deflected such questions with diatribes against Todd Prince and Radio Free Europe. (*See, e.g.*, DE 33-2 at App.241-242 [Ballout Dep. Tr. at 53:11-54:24], App.253 [Ballout Dep. Tr. at 85:1-17], App.258-259 [Ballout Dep. Tr. at 94:16-95:20]). Similarly, despite being charged with issuing false or misleading press releases in this case, Ballout issued a press release during this case on March 20, 2025—the same day he filed his Motion for Leave to Join Counterclaim Defendants,

which the Court denied soon thereafter (DE 30)—claiming he had "add[ed]" Todd Prince and Radio Free Europe as counterclaim defendants in this case, soliciting "interviews with U.S. and international media outlets" regarding his allegations, and promoting himself as "an expert in blockchain, investment banking, and regulatory affairs" with "extensive experience span[ning] financial governance, international markets, and corporate legal protections." (Ex. 8). In addition, as discussed, Ballout's ongoing activities present opportunities for future violations, including purportedly "serv[ing] on the boards of multiple multinational corporations," according to his company's website. (Ex. 3).[9]

Thus, a permanent officer-and-director bar against Ballout is warranted.[10] *See, e.g.*, *Huff*, 758 F. Supp. 2d at 1357, *aff'd*, 455 Fed. App'x 882 (11th Cir. 2012) ("where Huff has demonstrated his willingness and ability to repeat his transgressions, along with no recognition of his wrongdoing, nothing less than a lifetime [officer-and-director] bar will protect investors from Huff."); *SEC v. MCC Int'l Corp.*, No. 22-CV-14129, 2025 WL 1295061, at *10 (S.D. Fla. Feb. 25, 2025) (finding defendants "should be barred from trust-based roles" as officers or directors of a public company based on similar factors warranting permanent injunctions).

## D.     The Court Should Order Zayed to Pay Disgorgement and Prejudgment Interest

### 1.     Disgorgement: $96,000

This Court may order disgorgement of Zayed's ill-gotten gains causally connected to his securities law violations. A disgorgement award "that does not exceed a wrongdoer's net profits and is awarded for victims" is permissible equitable relief under Section 21(d)(5) of the Exchange Act.

---

[9] The "corporations" that Ballout is purportedly associated with do not appear to fall within the scope of companies for which Ballout could be barred from serving as an officer or director. *See* 15 U.S.C. §§77t(e), 78u(d)(2) (authorizing courts to bar a person from acting as an officer or director of an issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act).

[10] The SEC further incorporates by reference the arguments, findings, and evidence cited *supra* under section II.A pertaining to the permanent injunctive relief requested as further supporting the officer-and-director bar requested.

*Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020). Disgorgement is also authorized under amendments to the Exchange Act that Congress enacted after *Liu*. *See* 15 U.S.C. § 78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."); 15 U.S.C. § 78u(d)(3)(A)(ii) (granting jurisdiction to "require disgorgement ... of any unjust enrichment by the person who received such unjust enrichment as a result of such violation.").

The SEC is entitled to disgorgement "upon producing a reasonable approximation of a defendant's ill-gotten gains." *Calvo*, 378 F.3d at 1217. "Exactitude is not a requirement.'" *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005). Further, a defendant's financial situation, or any financial hardship that disgorgement would impose, are not factors to be considered in determining disgorgement. *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008).

Here, the Court should order Zayed to pay disgorgement of $96,000. As the Court found based on undisputed summary judgment evidence, "Zayed personally received $96,000 from Fielding as proceeds of the sale" of Fielding's Enerkon shares by means of Zayed's misrepresentations to Enerkon's transfer agent and related fraud. (DE 41 at 9, 10-11).

Furthermore, Zayed is not entitled to any deductions from disgorgement. As to disgorging net profits, "a defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement." *Liu*, 140 S. Ct. at 1950 (citing Restatement (Third) of Restitution and Unjust Enrichment, § 51, Comment h, at 216). At least two circuit courts have held that the defendant bears the burden to provide evidence of legitimate expenses. *See United States Commodity Futures Trading Comm'n v. Tayeh*, 848 Fed. Appx. 827, 830 (11th Cir. 2021) (per curium); *SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021). Here, Zayed did not produce any evidence

of legitimate expenses during discovery and cannot show that he incurred any such expenses in facilitating the issuance and conversion of Fielding's fraudulent promissory note.

### 2.     Prejudgment interest: $25,288.33

The Court has discretion to impose prejudgment interest on any disgorgement ordered. *SEC v. Carillo*, 325 F.3d 1268, 1273 (11th Cir. 2003). Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured from illegal activity. *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). The SEC seeks prejudgment interest in the amount of $25,288.33, which is calculated from June 25, 2021 (the date of Fielding's last payment to Zayed)[11] through May 30, 2025 (the month of the filing of this motion), and based on the tax underpayment rate set forth in 26 U.S.C. § 6621(a)(2). *See Huff*, 758 F.Supp.2d at 1363 (applying the IRS underpayment rate because it reflects what "it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from his fraud); (*see also* Ex. 1 [Martinez Decl. ¶ 3]; Ex. 2 hereto [Zayed Prejudgment Interest Report]).

In sum, the SEC requests that the Court order Zayed to pay $96,000 in disgorgement and $25,288.33 in prejudgment interest, for a total sum of $121,288.33.

### E.     The Court Should Order Zayed and Ballout to Pay Civil Penalties.

### 1.     Legal standard for imposing statutory civil penalties

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." *SEC v. Monterosso*, 756 F.3d 1326, 1338 (11th Cir. 2014). Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] authorize civil penalties under a three-tiered structure for

---

[11] (*See* DE 32 [SOF], ¶ 42 & n.66); (DE 33-1 at App.162B ($50,000 payment from Fielding to Zayed on 6/25/2021)).

federal securities law violations. In each tier, the penalty amount shall not exceed the *greater* of either (1) the specified statutory amount for the tier; or (2) the defendant's gross pecuniary gain as a result of the violation. 15 U.S.C. §§ 77t(d), 78u(d)(3). The statutory amounts are periodically adjusted for inflation as required by law. *See* 17 C.F.R. § 201.1001(a). As adjusted for inflation, the statutory penalties under Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act for violations by a natural person during the period of Defendants' misconduct in this case are as follows:[12]

| Tier | November 3, 2015 to Present |
|---|---|
| First | $11,823 |
| Second | $118,225 |
| Third | $236,451 |

Courts are to determine the amount of a first-tier penalty "in light of the facts and circumstances." 15 U.S.C. §§ 77t(d)(2)(A) and 78u(d)(3)(B)(i). A second-tier penalty may be imposed if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard for a regulatory requirement." 15 U.S.C. §§ 77t(d)(2)(B) and 78u(d)(3)(B)(ii). A third-tier penalty may be imposed if the requirements for a second-tier penalty are met <u>and</u> the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C) and 78u(d)(3)(B)(iii).

Moreover, the federal securities laws authorize maximum penalties for "each violation." *In re Reserve Fund Sec. & Derivative Litig.*, No. 09 Civ. 4346 PGG, 2013 WL 5432334, at *20 (S.D.N.Y. Sept. 30, 2013). While the statutory tier determines the maximum penalty allowed per

---

[12] SEC Release Nos. 33-11350; 34-102134; IA-6808; IC-35442, dated January 7, 2025 (effective Jan. 15, 2025), *available at* https://www.sec.gov/files/rules/other/2025/33-11350.pdf.

violation, "[t]he statutes leave the amount to be imposed to the discretion of the district judge." *Monterosso*, 756 F.3d at 1338. Courts have considered the following factors in determining whether to impose a civil penalty, and if so, the amount: (1) the egregiousness of the violation; (2) the degree of scienter involved; (3) isolated or repeated nature of the violations; (4) whether a defendant's conduct created substantial losses or risk of substantial losses to others; (5) whether the defendant concealed his violations; (6) defendants' failure to admit their wrongdoing; and (7) whether the penalty should be reduced because of a defendant's demonstrated financial position. *See SEC v. Solow*, 554 F. Supp. 2d 1356, 1365 (S.D. Fla. 2008) (Middlebrooks, J.), *aff'd*, 308 Fed. App'x 364 (11th Cir. 2009); *SEC v. Monterosso*, No. 07-61693-CIV, 2012 WL 12950028, at *6 (S.D. Fla. Feb. 16, 2012); *MCC Int'l*, 2025 WL 1295061, at *9 (citing *Huff*, 758 F. Supp. 2d at 1364).

### 2.    The Court should impose a $460,928 civil penalty against each Defendant

The SEC respectfully asks the Court to impose a civil penalty of $460,928 against each Defendant. That amount equates to two times the statutory maximum for a third-tier penalty ($236,451 x 2 = $460,928). The requested penalty amounts—which are authorized by statute and warranted under the facts and circumstances of this case—are meaningful, reasonable, and appropriate to punish Defendants for their participation in the fraudulent scheme and to deter them from future fraudulent endeavors.

First, a third-tier civil penalty against each Defendant is authorized. The Court's order granting partial summary judgment (see DE 41 at 6-11), and the undisputed summary judgment evidence supporting that order, establish that each Defendant's violations "involved fraud, deceit, manipulation, or deliberate or reckless disregard for a regulatory requirement." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Each Defendant's violations also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.*

17

Specifically, the SEC's unrebutted expert report found that Defendants' conduct artificially inflated Enerkon's stock price for a period lasting several weeks and that investors who purchased Enerkon stock during this period and held the stock through the SEC's June 2021 trading suspension were harmed. (DE 33-1 at App.043-044 [Orlov Rep. ¶ 38]). Moreover, Defendants' repeated misrepresentations and efforts to artificially inflate Enerkon's stock price, at minimum, created a significant risk of substantial losses to investors. *See SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-CV-81205-RAR, 2024 WL 4826059, at *18 (S.D. Fla. Nov. 18, 2024) (finding third-tier civil penalties authorized because defendants "made multiple serious misrepresentations to investors" that, at minimum, "create[d] a significant risk of substantial losses to investors"); *SEC v. Revolutionary Concepts, Inc.*, No. 21-10984, 2022 WL 386085, at *11 (11th Cir. Feb. 9, 2022) (finding third-tier penalty was not abuse of discretion and reasoning that district court's finding that defendant's misstatements in press releases created a "significant risk of substantial losses" was supported by the fact that such misstatements were material and misled investors).

Second, the Court is also authorized to impose two third-tier penalties against each Defendant, because each Defendant violated two statutes: (1) Section 17(a) of the Securities Act, and (2) Section 10(b) of the Exchange Act/Rule 10b-5 thereunder. (*See* DE 41 at 6-11). Other courts in the Eleventh Circuit have determined that this approach to counting violations for purposes of assessing civil penalties is both authorized and appropriate. *See, e.g.*, *SEC v. Mooney*, No. 1:22-CV-02320-SDG, 2025 WL 901802, at *6 (N.D. Ga. Mar. 25, 2025) ("courts are empowered to multiply the statutory penalty amount by the number of statutes the defendant violated, and many do.") (quoting *SEC v. Miller*, 744 F. Supp. 2d 1325, 1345 (N.D. Ga. 2010)).[13]

---

[13] *See also SEC v. Star Chain, Inc.*, No. 1:21-CV-03944-JPB, 2023 WL 1785764, at *4 (N.D. Ga. Feb. 3, 2023) (imposing two maximum third-tier statutory penalties and reasoning: "[b]ecause Defendants violated two statutes [i.e., Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act], doubling the civil penalty is appropriate in this case"); *SEC v. McClintock*, No. 1:12-CV-04028-SCJ, 2015 WL 12696101, at *3 (N.D. Ga. Oct. 28, 2015)

The Court could also double each Defendant's civil penalty based on Defendants' respective participation in two separate but related frauds—first, the "pump" (artificially inflating Enerkon's stock with false statements) and second, the "dump" (the conversion of Fielding's bogus promissory note). *Cf. SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-CV-81205-RAR, 2024 WL 4826059, at *5 (S.D. Fla. Nov. 18, 2024) (internal citation omitted) (noting "[s]ome courts look to the number of 'violative transactions'" in counting violations for civil penalties). Other approaches would likely result in even higher multipliers, such as assessing a civil penalty for each misrepresentation and each fraudulent or deceptive act. *See, e.g.*, *SEC v. Pattison*, No. C-08-4238 EMC, 2011 WL 723600, at *5 (N.D. Cal. Feb. 23, 2011) (citing *SEC v. Coates*, 137 F.Supp.2d 413, 427 (S.D.N.Y.2001) ("The Court may assess a penalty for each distinct violation, e.g., each time Defendant falsified a record.")). Under any of these approaches, the Court is authorized to impose the requested penalties against each Defendant.

    Third, the facts and circumstances of this case warrant assessing a civil penalty against each Defendant that amounts to two times the statutory maximum for a third-tier penalty. As discussed above, Defendants' violations were egregious, recurrent, and done with scienter. (DE 41 at 6-11). The unrebutted report of the SEC's expert establishes that Defendants' violations artificially inflated Enerkon's stock price for a period of at least several weeks and caused substantial losses to investors or, at minimum, a risk of substantial losses to investors. (DE 33-1 at App.043-044 [Orlov Rep. ¶ 38]). Ballout made misstatements and engaged in fraudulent conduct "in concert with Zayed," who concealed Defendants' violations through "fabricated documents" and "false websites and email addresses" in furtherance of the scheme. (*Id.* at 2-4, 10-11). Defendants

---

(imposing two maximum third-tier statutory penalties against each defendant based on two separate violations of securities laws).

have steadfastly refused to acknowledge any wrongdoing or the unrebutted evidence of their fraud. (*See, e.g.,* DE 40 at 1-15). Thus, all or nearly all relevant factors weigh strongly in favor of the proposed civil penalties.

Lastly, neither Defendants' financial position warrants a reduction in the civil penalties imposed against them. Zayed has not produced any evidence of his financial condition in this case. Although Ballout filed a Chapter 7 bankruptcy petition in July 2024, he has not argued or asserted any evidence in this case indicating that his current financial condition warrants a reduced penalty. Moreover, "[a]t most, ability to pay is one factor to be considered in imposing a penalty." *Monterosso*, 756 F.3d at 1338. Thus, even if Defendants argue or present evidence concerning their purported inability to pay, that should not outweigh the other factors that weigh heavily in favor of the civil penalties requested. *See, e.g.*, *SEC v. Kon*, No. 23-10738, 2024 WL 2271183, at *2 (11th Cir. May 20, 2024) ("nothing prohibited the district court from imposing a penalty or disgorgement liability greater than [defendant's] ability to pay because financial condition is, at most, 'one factor to be considered in imposing a penalty.'") (quoting *Warren*, 534 F.3d at 1370).

## III.   CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant this Motion, enter Final Judgments against Defendants in the form provided herewith, and grant the SEC such other relief to which it may be entitled.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2025, a copy of foregoing was filed electronically and served by mail as soon as practicable on anyone unable to accept electronic filing. Defendants Benjamin Ballout and Mohamed Zayed are also being emailed a copy of this motion at the emails they provided to the undersigned.

*/s/ Patrick Disbennett*
Patrick Disbennett

21